UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, LLC** | **CIVIL ACTION** |
| | **NO.  19-10927** |
| **VERSUS** | |
| | **JUDGE NANNETTE JOLIVETTE BROWN** |
| **NAVIGATION MARITIME BULGAREA; and BALKAN NAVIGATION LTD** | |
| | **MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR.** |

**ANSWER AND DEFENSES AND
THIRD-PARTY COMPLAINTS AGAINST
<u>ROBERT JOHNSON AND CRESCENT TOWING & SALVAGE CO., INC.</u>**

NOW INTO COURT, through undersigned counsel, comes plaintiff, Marquette Transportation Company Gulf-Inland, LLC ("Marquette"), and for its answer and defenses to the Counterclaim and Third-Party Demand filed by defendant Balkan Navigation Ltd. ("Balkan"), and for Marquette's Third-Party Complaint against Robert Johnson and Crescent Towing & Salvage Co., Inc., allege and avers upon information and belief as follows:

<u>**FIRST DEFENSE**</u>

The Counterclaim and Third-Party Complaint fails to state a cause or action upon which relief can be granted.

<u>**SECOND DEFENSE**</u>

AND NOW, in response to the allegations contained in the Counterclaim and Third-Party Complaint, Marquette avers upon information and belief as follows: the allegations contained in paragraph 1 are admitted; the allegations contained in paragraphs 2, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 are denied; the allegations contained in paragraphs 3 and 4 state conclusions of law and require no response but to the extent response is required Marquette admits the admiralty and

1

maritime jurisdiction of this Honorable Court and that venue is proper; the allegations contained in paragraph 5 are denied for lack of knowledge or information sufficient to justify a belief in the truth thereof; and the prayer for relief is denied.

### THIRD DEFENSE

AND NOW FURTHER answering, Marquette avers in the alternative that the damages alleged by counterclaimant and third-party plaintiff, if any exist, which specifically is denied, were caused solely by the fault and negligence of counterclaimant and third-party plaintiff, or others for whom Marquette has no responsibility, all of which precludes and bars counterclaimant and third-party plaintiff's recovery herein.

### FOURTH DEFENSE

The collision between the M/V STRANDJA and the M/V KIEFFER E. BAILEY was caused by the unseaworthiness of the M/V STRANDJA and/or by the fault, neglect and gross neglect of her owners or those in charge of her, including, but not limited to, the following:

(a) The M/V STRANDJA was unseaworthy;

(b) The M/V STRANDJA was not properly manned, equipped and supplied;

(c) The M/V STRANDJA failed to keep a proper lookout, failed to use all available means to determine if a risk of collision existed, and failed to make proper use of the vessel's radar;

(d) The M/V STRANDJA crew were improperly trained to deal with a grossly negligent and incompetent pilot;

(e) Those aboard M/V STRANDJA intentionally violated and/or failed to enforce U.S. Coast Guard Safety alerts and prohibiting cellphone use during navigation;

(f)     The M/V STRANDJA failed to make security broadcasts notifying vessel traffic that M/V STRANDJA would be topping out of the designated anchorage and into the navigation channel and the path of downbound traffic;

(g)     Those aboard M/V STRANDJA failed to take proper action to avoid collision;

(h)     Those aboard M/V STRANDJA improperly abdicated navigation of M/V STRANDJA to a grossly negligent and incompetent pilot who was using his cellphone while intentionally topping out of M/V STRANDJA's designated anchorage into the navigation channel and the path of downbound traffic;

(i)     Those aboard M/V STRANDJA failed to comply with their obligations under the Inland Rules of the Road and otherwise failed to operate M/V STRANDJA in accordance with applicable regulations and consistent with the principals of good seamanship;

(j)     Any and all unseaworthy conditions, acts of negligence and gross negligence identified in discovery.

**FIFTH DEFENSE**

Marquette avers that if counterclaimant/third-party plaintiff has failed to mitigate its alleged damages by not promptly conducting repairs and/or by failing to take any other actions of mitigation, then any recovery by counterclaimant is barred and/or must be reduced for such failure to mitigate.

**SIXTH DEFENSE**

M/V STRANDJA's bow thruster was not working and/or M/V STRANDJA's crew negligently failed to utilize the bow thruster to prevent M/V STRANDJA's bow from swinging out of the anchorage and into the path of oncoming traffic.

**SEVENTH DEFENSE**

The KIEFFER E. BAILEY complied with all applicable Inland Navigation Rules of the Road.

**EIGHTH DEFENSE**

AND NOW FURTHER ANSWERING THE COUNTERCLAIM AND THIRD-PARTY COMPLAINT, Marquette avers that the incident at issue and resultant damages occurred without the privity or knowledge of Marquette; that the amount of damages sued for in the counterclaim/third-party complaint herein exceeds the amount or value of Marquette's interests in the KEIFFER E. BAILEY and her freight then pending, if any; and, Marquette accordingly invokes the benefits of the provisions of the Revised Statutes of the United States of America and the acts amendatory thereof and supplemental thereto in limitation of the liability of shipowners, 46 U.S.C. § 30501, et seq., under which provisions no party is entitled to recover damages in a sum in excess of that amount or value of Marquette's interest in said KEIFFER E. BAILEY at the conclusion of the voyage during which the incident occurred and her freight then pending, even if Marquette be held liable for or by reason of the matters, or any of them, set forth in the Counterclaim/Third-Party  Complaint herein, which liability is specifically denied.

**MARQUETTE'S THIRD-PARTY COMPLAINT AGAINST
ROBERT JOHNSON**

AND NOW, for its Third-Party Complaint against Robert Johnson, Marquette Transportation Gulf-Inland, LLC ("Marquette") represents as follows:

1.

Third-Party Defendant Robert Johnson is a citizen of and domiciled in the State of Louisiana and was the Compulsory Crescent River Port Pilot aboard the M/V STRANDJA when

M/V STRANDJA topped unannounced out of her anchorage and into the path of the M/V KIEFFER E BAILEY flotilla causing collision.

2.

Balkan Navigation Ltd. ("Balkan") sued Marquette by way of counterclaim and verified third-party complaint for damages Balkan alleges to have sustained from the collision.

3.

Marquette denies any and all liability to counterclaimant/third-party plaintiff and incorporates by reference all of the responses and defenses contained in its Answers and Defenses to the Counterclaim/Third-Party Complaint as if copied herein and set forth in extenso.

4.

Pilot Johnson is subject to the jurisdiction of this Honorable Court because the tortious events occurred within the State of Louisiana and because Pilot Johnson is domiciled and resides in the State of Louisiana.

5.

Venue is proper because the tortious acts occurred just below Algiers Point, within the district of this Honorable Court.

6.

This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

7.

Marquette brings this cause of action under 14(c) of the Federal Rules of Civil Procedure.

8.

This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

9.

Marquette invokes the maritime procedures specified in Rule 9(h) of the Federal Rules of Civil Procedure and hereby tenders all claims asserted by Balkan in its verified third party complaint to Robert Johnson as a direct defendant to Balkan in accordance with 14(c) of the Federal Rules of Civil Procedure. Marquette also tenders under all applicable provisions of Rule 14 the counterclaim asserted by Balkan against Marquette to Robert Johnson.

10.

At about 1115 hours on January 3, 2019, Crescent River Port Pilot Robert "Bobby" Johnson boarded M/V STRANDJA and immediately instructed M/V STRANDJA's crew to start heaving M/V STRANDJA's port anchor. Pilot Johnson advised M/V STRANDJA's crew that "I am going to go as quick as possible." Pilot Johnson never conducted a master pilot exchange with M/V STRANDJA to discuss the intended maneuver and obtain pertinent information about M/V STRANDJA's maneuvering characteristics and crew.

11.

Pilot Johnson intentionally commenced an unannounced top around maneuver/procedure out of the designated anchorage into the navigation channel without ever making a security call and asking oncoming traffic (including but not limited the M/V KEIFFER E BAILEY flotilla) for permission to do so in violation of the Bridge-to-Bridge Radiotelephone Regulations, the ordinary practice of seamen and the Inland Navigation Rules.

12.

Two Crescent Towing & Salvage Co., Inc. ship assist tugs, M/V PROVIDENCE and M/V POINT CLEAR, were in the area standing by to assist the M/V STRANDJA.

13.

At 1119 hours, Pilot Johnson ordered the M/V PROVIDENCE to "come on over" and "get on the bow" of STRANDJA and intentionally instructed the M/V POINT CLEAR to leave despite Pilot Johnson recognizing that there was a two-tug maneuvering requirement in place at the time.

14.

At about 1122 hours, Pilot Johnson answered an incoming call on his cellphone and commenced a cellphone conversation that would last up until collision. This conversation had nothing to with the navigation or operation of the M/V STRANJDA and was in direct violation of U.S. Coast Guard Safety Alerts admonishing mariners from using cellphones during navigation. The conversation was focused on Pilot Johnson's frustration with his work schedule and having to work too many hours.

15.

At about 1123 hours, the Crescent Towing ship assist tug PROVIDENCE arrived alongside the port bow of STRANDJA. At this time, Pilot Johnson intentionally, and in callous disregard for the safety of oncoming vessel traffic, continued to engage in and focus on his cellphone conversation which concerned his frustration with his work schedule.

16.

At about 1124 hours, Pilot Johnson ordered STRANDJA's crew to start heaving STRANDJA's starboard anchor. At this time, Pilot Johnson intentionally and in callous disregard for the safety of oncoming vessel traffic continued to engage in and focus on his cellphone conversation which concerned his frustration with his work schedule.

17.

At 1124-55, M/V STRANDJA's crew advised Pilot Johnson that M/V STRANDJA's starboard anchor was heaved. At this time, Pilot Johnson intentionally and in callous disregard for

the safety of oncoming vessel traffic continued to engage in and focus on his cellphone conversation which concerned his frustration with his work schedule.

18.

At 1125-12, downbound KIEFFER E BAILEY radioed M/V STRANDJA to ascertain M/V STRANDJA's intentions and to establish a passing agreement. This radio call is clearly captured on the M/V STRANDJA's Voyage Data Recorder. Pilot Johnson disregarded this radio call and continued to intentionally engage in and focus on his cellphone conversation in callous disregard for the safety of oncoming vessel traffic.

19.

At 1125-27, downbound KIEFFER E BAILEY sounded her whistle at M/V STRANDJA to ascertain M/V STRANDJA's intentions and to establish a passing agreement. This whistle signal is clearly captured on M/V STRANDJA's Voyage Data Recorder. Pilot Johnson disregarded this whistle signal and continued to intentionally engage in and focus on his cellphone conversation in callous disregard for the safety of oncoming vessel traffic.

20.

At 1125-39, downbound KIEFFER E BAILEY again sounded her whistle at M/V STRANDJA. This whistle signal is clearly captured on M/V STRANDJA's Voyage Data Recorder. Pilot Johnson again disregarded this whistle signal and continued to intentionally engage in and focus on his cellphone conversation in callous disregard for the safety oncoming traffic. Indeed, here is an example excerpt from Pilot Johnson's cellphone communication at this time:

> **Pilot Johnson:** I'm not getting on a ship at 7 o'clock and being up at 7 o'clock, 6 o'clock at night you know?

21.

At 1125-46, M/V STRANDJA's crew attempted to shift Pilot Johnson's focus away from his non-navigational cellphone conversation and on to the situation at hand which was deteriorating due to M/V STRANDJA's topping out of the anchorage into the navigational channel where KIEFFER E BAILEY was navigating. Here is the bridge communication:

**STRANDJA Crew:** Uh, Mr. Pilot?

**Pilot Johnson:** It's fine. It's fine.

22.

Pilot Johnson intentionally and callously disregarded M/V STRANDJA's crew's question and continued to focus on his non-navigational cellphone conversation concerning his frustration with his work schedule.

23.

At 1126-01, M/V STRANDJA's crew informed Pilot Johnson that "Tugboat touching us" and Pilot Johnson ordered a dead slow astern engine order in response.

24.

Pilot Johnson's unannounced attempt to intentionally top out of M/V STRANDJA's designated anchorage "as quick as possible" into the path of oncoming traffic while talking on his cellphone in callous disregard for the safety of oncoming traffic constitutes gross negligence and willful misconduct making him liable for the collision.

25.

Pilot Johnson's intentional and callous failure to conduct a master pilot exchange and intentional decision to top around into the path of oncoming traffic before discussing the maneuver with M/V STRANDJA's crew and oncoming traffic constitutes gross negligence and willful misconduct making him liable for the collision.

PD.26844944.1

26.

Pilot Johnson's intentional and callous failure to announce that he would be intentionally topping out of the designated anchorage and into the path of KIEFFER E BAILEY constitutes gross negligence and willful misconduct which makes him liable to for the incident.

27.

Pilot Johnson's intentional and callous disregard of the U.S. Coast Guard Safety Alerts admonishing him not to use his cellphone during navigation constitutes gross negligence and willful misconduct which makes him liable for the incident.

28.

Pilot Johnson's intentional and callous disregard/refusal to respond to KIEEFFER E BAILEY's radio calls and whistle signals constitutes gross negligence and willful misconduct which makes him liable for the incident.

29.

Pilot Johnson's intentional and callous disregard of M/V STRANDJA's crew's effort to persuade Pilot Johnson to focus on M/V STRANDJA's navigation as M/V STRANDJA was topping out into the navigable channel and into the path of downbound KIEFFER E BAILEY constitutes gross negligence and willful misconduct which makes him liable for the incident.

30.

Based on the above, Pilot Johnson is jointly and severally responsible for any and all damages allegedly resulting from the collision and must respond to and answer Balkan's Counterclaim and Third-Party Complaint pursuant to Rule 14(c) and other applicable provisions of Rule 14 of the Federal Rules of Civil Procedure.

## MARQUETTE'S THIRD-PARTY COMPLAINT AGAINST
## <u>CRESCENT TOWING & SALVAGE CO., INC.</u>

AND NOW, for its Third-Party Complaint against Crescent Towing & Salvage Co., Inc. ("Crescent"), Marquette Transportation Gulf-Inland, LLC ("Marquette") represents as follows:

1.

Third Party Defendant, Crescent, was and is now a corporation organized and existing under the laws of the State of Louisiana and doing business within the State of Louisiana and within the jurisdiction of this Honorable Court.

2.

Third Party Defendant, Crescent, at all times pertinent, was and is now the owner and operator of the M/V PROVIDENCE which was the ship assist tug positioned on the port bow of the M/V STRANDJA as M/V STRANDJA was making her unannounced top around maneuver out of M/V STRANDJA's designated anchorage and into the navigable channel which downbound KIEFFER E BAILEY was navigating in.

3.

Balkan Navigation Ltd. ("Balkan") sued Marquette by way of counterclaim and verified third-party complaint for damages it alleges to have sustained from the collision.

4.

Marquette denies any and all liability to counterclaimant/third-party plaintiff and incorporates by reference all of the responses and defenses contained in its Answers and Defenses to the Counterclaim and Third-Party Complaint as if copied herein and set forth in extenso.

5.

Crescent is subject to the jurisdiction of this Honorable Court because the tortious events occurred within the State of Louisiana and because Crescent is a Louisiana corporation with its principal place of business in Louisiana.

6.

Venue is proper because the tortious acts occurred just below Algiers Point, which is within the district of this Honorable Court.

7.

This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

8.

Marquette brings this cause of action under 14(c) of the Federal Rules of Civil Procedure.

9.

This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

10.

Marquette invokes the maritime procedures specified in Rule 9(h) of the Federal Rules of Civil Procedure and hereby tenders Crescent as a direct defendant to Balkan in accordance with 14(c) of the Federal Rules of Civil Procedure.

11.

Paragraphs 1 to 30 of Marquette's Third-Party Complaint Against Robert Johnson, above, are incorporated by reference as if fully set forth herein.

12.

As stated above, M/V PROVIDENCE was instructed by the M/V STRANDJA's Pilot and Crew to "come on over" and "get on the bow" of M/V STRANDJA at about 1119 hours on January 3, 2019.

13.

At about 1123 hours, the M/V PROVIDENCE came alongside M/V STRANDJA's port bow.

14.

After M/V PROVIDENCE came alongside M/V STRANDJA's port bow, M/V STRANDJA began topping out of M/V STRANDJA's designated anchorage and into the path of the downbound KIEFFER E BAILEY flotilla.

15.

After collision, M/V STRANDJA's Pilot Robert Johnson claimed he didn't know what M/V PROVIDENCE was doing to M/V STRANDJA and thus suggested PROVIDENCE did not follow his instructions.  Here is a transcription of the 1139 statement by Pilot Johnson captured by M/V STRANDJA's Voyage Data Recorder:

> **Pilot Johnson:**   I don't know what that PROVIDENCE was doing to me.

16.

Marquette hereby tenders Crescent to Balkan by way of Rule 14(c).

17.

The M/V PROVIDENCE, as a ship assist tug, had a duty to follow and safely perform instructions from M/V STRANDJA.  As indicated in the 1139 transcription above, Pilot Johnson

13

stated on M/V STRANDJA's bridge after collision that he didn't know what the M/V PROVIDENCE was doing to the M/V STRANDJA before collision and thus questioned whether the M/V PROVIDENCE had followed and safely performed Pilot Johnson's "come alongside" instruction.

18.

Further, the navigational data shows that M/V STRANDJA began to quickly swing out of the designated anchorage and into the path of the KIEFFER E BAILEY shortly after M/V PROVIDENCE came alongside the port bow of M/V STRANDJA.  This data indicates that M/V PROVIDENCE did not simply come alongside as instructed but instead gave starboard rudder and increased RPMs which exacerbated M/V STRANDJA's negligent topping around into the navigable channel and into the path of the KIEEFER E BAILEY.  Therefore, Crescent is liable for M/V PROVIDENCE's failure to properly and safely execute the "come alongside" order provided by M/V STRANDJA and Pilot Johnson.

WHEREFORE, having fully responded to the Counterclaim and Third-Party Complaint, and having stated its affirmative defenses, Marquette prays that a judgment be entered in Marquette's favor and that according to Marquette's Third-Party Complaints, Robert Johnson and Crescent respond to Balkan's counterclaim and verified third-party complaint according to the Federal Rules of Civil Procedure.

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:   /s/ Adam N. Davis
      Evans Martin McLeod (Bar #24846)
      Adam N. Davis (Bar #35740)
      Justin C. Warner (Bar #37349)
      Canal Place | 365 Canal Street, Suite 2000
      New Orleans, Louisiana 70130-6534
      Telephone: 504-566-1311
      Facsimile: 504-568-9130
      Email: marty.mcleod@phelps.com
      Email: adam.davis@phelps.com
      Email: justin.warner@phelps.com


ATTORNEYS FOR PLAINTIFF
MARQUETTE TRANSPORTATION
COMPANY GULF-INLAND, LLC