**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-10927** |
| **NAVIGATION MARITIME BULGAREA ET AL.** | **SECTION: "G"(2)** |

**ORDER AND REASONS**

Before the Court is Defendant Balkan Navigation Ltd. and Defendant Navigation Maritime Bulgare JSC's (collectively, "Balkan") "Motion to Strike Jury Demand."[1] Plaintiff Marquette Transportation Company Gulf-Inland, LLC ("Marquette") opposes the motion.[2] This litigation arises from an alleged collision between Marquette's vessel, the KIEFFER BAILEY, and Balkan's vessel, the M/V STRANDJA, in the Mississippi River near Chalmette, Louisiana.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies Balkan's motion to strike jury demand.

**I. Background**

***A. Factual Background***

On January 3, 2019, the KIEFFER BAILEY allegedly collided with the M/V STRANDJA while proceeding down the Mississippi River near Chalmette, Louisiana.[4] At the time of the

[1] Rec. Doc. 56.

[2] Rec. Doc. 60.

[3] Rec. Doc. 1 at 2–3.

[4] *Id.*

alleged incident, Marquette was the owner and/or operator of the KIEFFER BAILEY, Defendant Navigation Maritime Bulgare JSC was the ship manager and/or operator of the M/V STRANDJA, and Defendant Balkan Navigation Ltd. was the registered owner of the M/V STRANDJA.[5] Marquette alleges that the KIEFFER BAILEY was proceeding down the middle of the Mississippi River when the M/V STRANDJA steered directly into its navigational path.[6] Marquette claims that Balkan's vessel struck and damaged Marquette's vessel.[7] Marquette also claims that its crewmembers sustained physical and emotional injuries.[8]

### *B. Procedural Background*

On June 6, 2019, Marquette filed a complaint in this Court.[9] Marquette avers that as a result of "Defendants' negligence and unseaworthiness of the M/V STRANDJA, Marquette has incurred liabilities and damages."[10] Marquette seeks damages for "barge damage, loss of use, survey and salvage fees, and other expenses, interests, and costs" as well as "contribution and/or indemnity from Defendants" for the alleged physical and emotional injuries to crewmembers aboard the KIEFFER BAILEY.[11]

Marquette asserts that this Court has original subject matter jurisdiction pursuant to the federal diversity jurisdiction statute 28 U.S.C. § 1332.[12] Specifically, Marquette states: "This

[5] *Id.* at 1–2.

[6] *Id.* at 2–3.

[7] *Id.* at 3.

[8] *Id.*

[9] Rec. Doc. 1.

[10] *Id.* at 3.

[11] *Id.*

[12] *Id.* at 1.

claim involves a controversy in excess of $75,000 and a citizen of a state and citizens of a foreign state. Jurisdiction is based on 28 U.S.C. § 1332."[13] Marquette also requests a trial by jury.[14]

On June 21, 2019, Balkan answered the complaint, filed a counterclaim against Marquette, and brought a third-party demand *in rem* against Marquette's vessel, the KIEFFER BAILEY, to recover damages incurred by the M/V STRANDJA.[15] On September 11, 2019, Marquette answered Balkan's counterclaim and, with leave of Court, filed third-party complaints against Crescent Towing & Salvage Co., Inc. ("Crescent") and Robert Johnson ("Johnson").[16] In the third-party complaint against Crescent and Johnson, Marquette brings "admiralty and maritime claim[s] within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure."[17] Marquette also tenders Crescent and Johnson as direct defendants to Balkan in accordance with Rule 14(c) of the Federal Rules of Civil Procedure.[18]

On October 23, 2019, with leave of Court, Marquette amended the complaint to name Balkan's vessel, the M/V STRANDJA, as an *in rem* defendant in this litigation.[19] Marquette averred that the M/V STRANDJA was liable to Marquette as a result of its "negligence, gross negligence, and unseaworthiness" which allegedly caused the collision.[20] Marquette brought suit against the M/V STRANDJA as "an admiralty and maritime claim within the meaning of 28

---

[13] *Id.*

[14] *Id.* at 3.

[15] Rec. Doc. 6.

[16] Rec. Doc. 17.

[17] *Id.* at 5, 12.

[18] *Id.* at 6, 12.

[19] Rec. Doc. 29 at 1.

[20] *Id.* at 5.

U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure."[21] In the amended complaint, Marquette "reallege[d] and re-aver[red] all allegations of its original complaint and third-party complaint as fully and completely as if copied herein in extenso."[22] On June 10, 2020, Marquette voluntarily dismissed the amended complaint.[23]

On June 24, 2020, Balkan filed the instant "Motion to Strike Jury Demand," arguing that that Marquette's request for a jury trial is precluded because: (1) Marquette cannot establish the amount in controversy required for this Court to exercise diversity jurisdiction, and (2) Marquette's actions demonstrate that it elected to proceed in admiralty and therefore has no right to trial by jury.[24] On July 7, 2020, Marquette filed an opposition to the motion to strike jury demand.[25] On July 17, 2020, with leave of Court, Balkan filed a reply memorandum in further support of the motion to strike jury demand.[26]

## II. Parties' Arguments

### A. *Balkan's Motion to Strike Jury Demand*

Balkan makes two arguments to demonstrate that Marquette's jury demand should be stricken.[27] First, Balkan contends that Marquette is unable to establish the requisite amount in controversy for this Court to exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332.[28] Balkan

---

[21] *Id.* at 2.

[22] *Id.* at 1 (internal citations omitted).

[23] Rec. Doc. 53.

[24] Rec. Doc. 56.

[25] Rec. Doc. 60.

[26] Rec. Doc. 64.

[27] Rec. Doc. 56-1.

[28] *Id.* at 1–2.

relies on Marquette's amended complaint and documents received from Marquette during discovery to contend that the amount in controversy at the time of filing was at most $51,682.37, a figure "well below" the statutory requirement of $75,000.[29] Consequently, Balkan argues that Marquette's claim is not cognizable under this Court's federal diversity jurisdiction.[30] Balkan concludes that because Marquette's claim is cognizable only in admiralty jurisdiction, Marquette is not entitled to a jury trial pursuant to Federal Rule of Civil Procedure 38(e).[31]

Second, Balkan argues that Marquette's actions demonstrate that it elected to proceed in admiralty thereby precluding its right to a jury trial.[32] Specifically, Balkan asserts that Marquette "designated its third-party demands against Crescent and Johnson as admiralty and maritime claims within the Court's admiralty jurisdiction, 28 U.S.C. § 1333, expressly made the Rule 9(h) election to proceed in admiralty, and tendered Crescent and Johnson as direct defendants to Balkan in accordance with Rule 14(c) of the Federal Rules of Civil Procedure."[33] Balkan further asserts that when answering Balkan's counterclaim, Marquette admitted the admiralty and maritime jurisdiction of this Court.[34] Additionally, Balkan claims that Marquette's amended complaint, which was later dismissed, brought an *in rem* action against the M/V SRANDJA and therefore "further demonstrates Marquette's invocation of maritime-only remedies in this case."[35]

In sum, Balkan argues that because Marquette's original claim is designated as an

---

[29] *Id.* at 7–8.

[30] *Id.* at 6.

[31] *Id.* at 9.

[32] *Id.*

[33] *Id.* at 10.

[34] *Id.* at 11.

[35] *Id.*

admiralty claim, and because there is no jury trial right where a claim is designated as an admiralty claim, Marquette's jury demand should be stricken and this case should proceed to a bench trial.[36]

***B. Marquette's Arguments in Opposition***

Marquette raises three arguments in opposition to Balkan's motion to strike jury demand.[37] First, Marquette argues that this Court has subject matter jurisdiction pursuant to the federal diversity statute, 28 U.S.C. § 1332, because Marquette, in good faith, alleges that the amount in controversy exceeds $75,000.[38] In support, Marquette points to the complaint wherein it alleges damages encompassing "barge damage, loss profits, survey costs, and claims incurred due to obligations related to payment of maintenance and cure to its crew as well as associated expenses due to Balkan's negligence."[39] Marquette also submits an affidavit of its counsel, Evans Martin McLeod, swearing that the amount in controversy exceeds $75,000 and providing detailed estimates of the potential damages.[40] Marquette urges that it only admitted admiralty jurisdiction in its answer to Balkan's counterclaim because Balkan chose to proceed in admiralty by making a Federal Rule of Civil Procedure 9(h) designation in its counterclaim.[41]

Second, Marquette insists that it chose to proceed pursuant to this Court's diversity jurisdiction—as opposed to in admiralty—with respect to its original claim against Balkan by pleading diversity jurisdiction as the sole basis for the exercise of this Court's jurisdiction.[42]

---

[36] Rec. Doc. 56-1 at 2.

[37] Rec. Doc. 60.

[38] *Id.* at 12.

[39] *Id.*

[40] *Id.* at 14; Rec. Doc. 60-1.

[41] Rec. Doc. 60 at 14.

[42] *Id.* at 14, 16.

Marquette contends that its election to proceed pursuant to this Court's admiralty jurisdiction with respect to subsequent third-party complaint against Crescent and Johnson does not dislodge its right to a jury trial on its original claim against Balkan.[43]

Third, Marquette argues that pursuant to Federal Rule of Civil Procedure 41(a)(1), the dismissal of its amended complaint, which was filed against the M/V STRANDJA *in rem*, placed Marquette "in the same legal position" it was in prior to filing the amended complaint and did not alter its intent to proceed on the law side of the federal court.[44]

Additionally, Marquette seeks to have Balkan's counterclaim tried by a jury.[45] Marquette urges the Court to exercise its judicial discretion to order that Marquette's claims and Balkan's counterclaims both be tried by a single jury to "avoid the inefficiencies of a bifurcated trial."[46]

### *C. Balkan's Arguments in Further Support of the Motion to Strike Jury Demand*

Balkan replies to Marquette's opposition with two arguments in further support of the motion to strike jury demand. First, Balkan reasserts that Marquette is unable to meet its burden of establishing the amount in controversy for this Court to exercise jurisdiction under 28 U.S.C. § 1332.[47] Balkan claims that Marquette's failure to include certain damages in its discovery responses undermines Marquette's contention that the amount in controversy satisfies the jurisdictional requirement.[48] Balkan maintains that Marquette's alleged damages total only

---

[43] *Id.* at 14–15.

[44] *Id.* at 18.

[45] *Id.* at 18–19.

[46] *Id.* at 19.

[47] Rec. Doc. 64 at 1.

[48] *Id.* at 3.

$51,682.37.[49]

Second, Balkan restates that Marquette's actions demonstrate that it elected to proceed in admiralty despite initially designating its claim pursuant to this Court's federal diversity jurisdiction.[50] Balkan emphasizes that Marquette invoked admiralty jurisdiction in the claims it brings against Johnson and Crescent.[51] For these reasons, Balkan contends that the instant lawsuit should be treated as an admiralty action and the Court should strike Marquette's jury demand.[52]

## III. Legal Standard

Pursuant to Federal Rule of Civil Procedure Rule 39(a), once a jury demand has been made, a court may try the matter without a jury only with the consent of the parties or if it determines that no right to a jury trial actually exists.[53] In the instant case, Balkan argues that no right to a jury trial exists because Marquette has not established that amount in controversy is met for this Court to exercise diversity jurisdiction, and Marquette's actions throughout this case show that it elected to proceed in admiralty.

The Constitution provides that the judicial power of the federal courts "shall extend . . . to all cases of admiralty and maritime jurisdiction."[54] Accordingly, 28 U.S.C. § 1333(1) provides that the district courts shall have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise

---

[49] *Id.* at 2.

[50] *Id.* at 6.

[51] *Id.* at 8.

[52] *Id.*

[53] *See* Fed. R. Civ. P. 39(a); *LeBlanc v. Panther Helicopters, Inc.*, 2015 A.M.C. 413, 423 (E.D. La. 2015) (Barbier, J.).

[54] U.S. Const. art III, § 2, cl. 1.

entitled."[55] "This statutory grant gives federal courts jurisdiction over all admiralty and maritime cases, regardless of the citizenship of the parties or the amount in controversy."[56] It also "reserves to suitors 'all other remedies to which they are otherwise entitled.'"[57] "[O]ne significance of the savings-to-suitors clause, [is that it] permits a litigant to obtain federal jurisdiction over, and jury resolution of, an admiralty question by invoking federal jurisdiction on an independent basis."[58] Therefore, "[a] maritime issue may be raised in a diversity suit."[59]

"When a plaintiff's claim is cognizable under admiralty jurisdiction and some other basis of federal jurisdiction, [Rule 9(h) of] the Federal Rules of Civil Procedure allow[s] the plaintiff to expressly designate her claim as being in admiralty."[60] The United States Court of Appeals for the Fifth Circuit has held that "the mere assertion of admiralty jurisdiction as a dual or an alternate basis of subject matter jurisdiction for a claim is sufficient to make a Rule 9(h) election to proceed in admiralty for that claim."[61]

"Numerous and important consequences" flow from a plaintiff's decision to proceed "under admiralty or diversity jurisdiction."[62] "The Federal Rules of Civil Procedure give special treatment to admiralty claims," including designating the Seventh Amendment right to trial by

---

[55] 28 U.S.C. § 1333(1).

[56] *Luera v. M/V Alberta*, 635 F.3d 181, 188 (5th Cir. 2011).

[57] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454 (2001) (citing 28 U.S.C. § 1333(1)).

[58] *Cont'l Cas. Co. v. Canadian Universal Ins. Co.,* 605 F.2d 1340, 1344 (5th Cir. 1979).

[59] *Id*.

[60] *Luera*, 635 F.3d at 188; *see also* Fed. R. Civ. P. 9(h) ("If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim . . . .")

[61] *Luera*, 635 F.3d at 188–89 (internal citation omitted).

[62] *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 586 (5th Cir. 1983) (citing 5 Wright & Miller, Federal Practice and Procedure: Civil § 1313 at 453 (1969)).

jury as attaching to "diversity suits but not to admiralty suits."[63]

## IV. Analysis

In the instant motion, Balkan argues that Marquette's request for a jury trial is precluded for two reasons: (1) Marquette cannot establish the amount in controversy required for this Court to exercise diversity jurisdiction, and (2) Marquette's actions demonstrate that it elected to proceed in admiralty and therefore has no right to trial by jury.[64] The Court addresses each of these issues in turn.

### *A. Whether this Court may Exercise Jurisdiction Pursuant to 28 U.S.C. § 1332*

The first question before this Court is whether it can exercise federal diversity jurisdiction over Marquette's claims against Balkan. Balkan argues that Marquette is unable to establish the requisite amount in controversy for this Court to exercise original jurisdiction pursuant to 28 U.S.C. § 1332.[65] In response, Marquette contends that the complaint, in good faith, alleges that the amount in controversy exceeds $75,000.[66]

A federal court has independent subject matter jurisdiction under 28 U.S.C. § 1332 over an action "where the matter in controversy exceeds the sum or value of $75,000" and the action "is between citizens of different states"[67] or "citizens of a State and citizens or subjects of a foreign state."[68] When determining whether the exercise of federal diversity jurisdiction is

---

[63] *Id.* at 587 (citing Fed. R. Civ. P. 38(a), (e)); *see also Becker v. Tidewater, Inc.*, 405 F.3d 257, 259 (5th Cir. 2005) (discussing "the historical exclusion of jury trials for admiralty suits").

[64] Rec. Doc. 56.

[65] Rec Doc. 56-1 at 1–2.

[66] Rec. Doc. 60 at 12.

[67] 28 U.S.C. § 1332(a)(1).

[68] 28 U.S.C. § 1332(a)(2).

warranted, "unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith" and to justify dismissal "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount."[69]

Here, it is readily apparent from the complaint that Marquette alleges in good faith that the amount in controversy exceeds $75,000.[70] Paragraph one of the complaint reads: "This claim involves a controversy *in excess of $75,000*. . . ."[71] Paragraphs eight and nine of the complaint further illuminate the amount in controversy, asserting that damages encompass "barge damage, loss of use, survey and salvage fees, and other expenses, interests, and costs" as well as "contribution and/or indemnity for any and all maintenance and cure obligations or legal liabilities" resulting from alleged "physical and emotion injures" to "crewmembers aboard the KIEFFER BAILEY. . . ."[72]

In its answer to the complaint filed by Marquette, Balkan stated that it "does not contest the Court's jurisdiction."[73] Rather, Balkan now relies on Marquette's amended complaint and documents received from Marquette during discovery to contend that the amount in controversy at the time of filing was at most $51,682.37, a figure "well below" the statutory requirement of $75,000.[74]

---

[69] *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (internal citations omitted).

[70] It is uncontested that the action is between a citizen of a state and citizens of a foreign state. Marquette incorrectly pleads the citizenship for a limited liability company, but it is clear from the complaint that Marquette is a United States citizen. Rec. Doc. 1 at 1; Rec. Doc. 29 at 2. Defendants Navigation Maritime Bulgarea and Balkan Navigation LTD are both Bulgarian companies. Rec. Doc. 1 at 2; Rec. Doc. 6 at 2.

[71] Rec. Doc. 1 at 1 (emphasis added).

[72] *Id.* at 3.

[73] Rec. Doc. 6 at 2.

[74] Rec. Doc. 56-1 at 7–8.

For the reasons that follow, the Court finds that none of the records offered by Balkan establish to a legal certainty that Marquette's total damages are limited to $51,682.37. First, Marquette's amended complaint incorporated all allegations of the original complaint and added the M/V STRANDJA as a defendant *in rem*.[75] The $51,682.37 figure relied upon by Balkan refers only to Marquette's maritime lien on the M/V STRANDJA; this figure presumably does not comprise claims against the other defendants.[76] Additionally, paragraph thirteen of the amended complaint states that the maritime lien on the M/V STRANDJA totals "$51,682.37 *plus any damages Marquette is legally responsible for in this matter*," thereby indicating that the maritime lien itself may well exceed $51,682.37.[77] Moreover, Marquette dismissed the amended complaint pursuant to Federal Rule of Civil Procedure 41(a)(1)(A) before any party filed an answer.[78] The effect of a Rule 41(a) dismissal "is to put the plaintiff in a legal position as if he had never brought the [] suit."[79] Accordingly, the amended complaint does not vitiate Marquette's original good faith assertion of federal diversity jurisdiction.

Second, Balkan offers an email and corresponding exhibits from Marquette's counsel in support of its claim that the amount in controversy falls below the statutory requirement.[80] The email references Marquette's "$51,682.37 damage claim" in the "STRANDJA Litigation," but proceeds to state that "Marquette requests security from STRANDJA in the amount of

---

[75] Rec. Doc. 29 at 1.

[76] *Id.* at 6.

[77] *Id.*

[78] Rec. Doc. 53.

[79] *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir. 1976) (internal citations omitted).

[80] Rec. Doc. 56-3.

$77,635."[81] Accordingly, nothing in the email suggests that Marquette's total damages in this litigation fall below the amount in controversy required for the exercise of this Court's federal diversity jurisdiction.

Third, in opposition to the motion to strike jury demand, Marquette offers an affidavit from its attorney representing that Marquette's damages at the time the complaint was filed exceeded $75,000.[82] The affiant declares that Marquette's damages include liability from alleged "maintenance and cure exposure in excess of $75,000 due to the potential claim of its former crewmember Demarkus Beckham who stated he fell and injured his neck and back during the collision and stopped working at Marquette as a result of the incident."[83]

Unlike in the context of removal, where "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court," when the plaintiff files in a federal forum the sum alleged by the plaintiff controls so long as it is made in good faith, unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount.[84] Given both the plain language of the complaint and the scope of potential damages arising from the alleged maritime collision, the Court finds that Marquette in good faith alleges an amount in controversy in excess of the jurisdictional requirement. Furthermore, Balkan has not demonstrated to a legal certainty that the claim is really for less than the jurisdictional amount.

---

[81] *Id.*

[82] Rec. Doc 60-1.

[83] Rec. Doc. 60 at 12. Balkan's assertion that Marquette's damages total $51,682.37 allots only $122 in medical bills. Rec. Doc. 56-1 at 8. Given the severity of injuries allegedly sustained by Marquette's crewmember, this figure strikes the Court as quite low.

[84] *St. Paul Mercury Indem. Co.*, 303 U.S. at 288–90.

***B. Whether Marquette has a Right to a Jury Trial for its Claims Against Balkan***

The second question before this Court is whether no right to a jury trial actually exists on Marquette's claims against Balkan.[85] Balkan argues that Marquette's actions demonstrate that it elected to proceed in admiralty and thereby strip Marquette of its right to a jury trial.[86] Marquette denies that it intended to proceed against Balkan in admiralty and insists that it pleaded diversity jurisdiction as the sole basis for the exercise of this Court's jurisdiction over its claims against Balkan.[87] Consequently, Marquette contends that it preserved its right to trial by jury.[88]

The Court finds that Marquette's right to a jury trial on its claims against Balkan is preserved for four reasons. First, Marquette clearly elected to bring its original claims against Balkan pursuant to this Court's federal diversity jurisdiction. Other district courts have held that "demanding a jury trial is inconsistent with an intent to designate a claim as a maritime claim under Rule 9(h) and to invoke admiralty jurisdiction."[89] In the complaint, Marquette pleads diversity jurisdiction and requests a jury trial.[90] Moreover, Marquette does not invoke admiralty jurisdiction or evince an intent to invoke Rule 9(h) anywhere in the complaint.[91] In other words, Marquette has clearly chosen to proceed against Balkan pursuant to this Court's federal diversity

[85] *See* Fed. R. Civ. P. 39.

[86] Rec Doc. 56-1 at 9.

[87] Rec. Doc. 60 at 14, 16.

[88] *Id.* at 19.

[89] *Seemann v. Coastal Envtl. Grp., Inc.*, 2016 WL 7388537, at *4 (E.D.N.Y. July 2, 2016) (collecting cases); *see also* 2 Admiralty & Mar. Law § 21:2 (6th ed.) ("[I]f the pleader wants to *avoid* admiralty (usually because a jury trial is desired), counsel should plead diversity jurisdiction and demand a jury in the complaint.")

[90] Rec. Doc. 1 at 1, 3.

[91] *See* Rec. Doc. 1.

jurisdiction.

Second, Marquette does not plead admiralty jurisdiction with respect to its claims against Balkan. Balkan argues that Marquette's admission of admiralty jurisdiction in its answer to Balkan's counterclaim demonstrates Marquette's intent to proceed in admiralty.[92] Crucially, Marquette's admission of admiralty jurisdiction is only *in response to Balkan's counterclaim*, which Balkan designates as an admiralty claim within the meaning of 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.[93] In other words, Balkan properly designates its counterclaim in this Court's admiralty jurisdiction, and Marquette only admits admiralty jurisdiction insofar as it applies to Balkan's claim.

Third, Marquette's invocation of admiralty procedures in its third-party complaint does not demonstrate Marquette's intention to proceed in admiralty on its claims against Balkan. In the third-party complaint against Crescent and Johnson, Marquette invokes admiralty procedures under Federal Rule of Civil Procedure 14(c), available only in admiralty, by tendering Crescent and Johnson as direct defendants to Balkan.[94] Because Balkan specifies that it brings its counterclaims in the Court's admiralty jurisdiction pursuant to Rule 9(h),[95] Marquette, as third-party plaintiff, is able to invoke Rule 14(c) admiralty procedures without sacrificing the right to a jury trial on its original claims. Therefore, Marquette's invocation of admiralty procedures in response to Balkan's counterclaim does not override its original election to proceed in diversity on its original claims.

---

[92] Rec. Doc. 56-1 at 11; Rec. Doc. 17 at 1–2.

[93] Rec. Doc. 6 at 4.

[94] Rec. Doc. 17 at 6, 12. Rule 14(c) is a third-party impleader procedure available exclusively in admiralty. Fed. R. Civ. P. 14(c).

[95] Rec. Doc. 6 at 9.

Marquette's direct claims against Crescent and Johnson brought pursuant to this Court's admiralty jurisdiction[96] also do not affect its right to a jury trial on its claims against Balkan. The United States Court of Appeals for the Fifth Circuit's decision in *Luera* is instructive.[97] There, the plaintiff asserted both *in rem* admiralty claims and *in personam* claims premised on diversity jurisdiction.[98] The Fifth Circuit addressed the issue of "whether the plaintiff automatically makes a Rule 9(h) election to proceed under the admiralty rules when she specifically asserts only diversity jurisdiction for one claim in the same complaint as a separate claim cognizable only under admiralty jurisdiction."[99]

In *Luera*, the Fifth Circuit rejected the defendants' contention that the "mere presence" of an admiralty claim amounts to a Rule 9(h) election for the remainder of the plaintiff's claims because "by its plain language, Rule 9(h) applies to 'claims' and not to entire cases."[100] The *Luera* court reasoned that because the plaintiff "clearly expressed her intent that her claims against the *in personam* defendants are premised on the district court's diversity jurisdiction," the plaintiff preserved her Seventh Amendment right to a jury trial for those claims.[101] Like the plaintiff in *Luera*, Marquette clearly expressed its intent to proceed pursuant to this Court's diversity jurisdiction with respect to its claims against Balkan.[102]

---

[96] Rec. Doc. 17 at 5.

[97] 635 F.3d at 187.

[98] *Id.* Notably, in this case, Marquette brings its admiralty claims in a separate complaint, thereby presenting a much simpler case than *Luera*.

[99] *Id.* at 189.

[100] *Id.* at 190.

[101] *Id.* at 185, 190.

[102] Unlike the plaintiff in *Luera*, Marquette brought *in personam* claims against Crescent and Johnson pursuant to this Court's admiralty jurisdiction. This is a distinction without a difference, however, because

Similarly, in *William P. Brooks Const. Co., Inc.* v. *Guthrie*, the Fifth Circuit held that the district court was not divested of its original admiralty jurisdiction by the defendant's contractual defense set out in his cross-action.[103] Although the instant action presents the inverse situation—Balkan argues that its counterclaim, and Marquette's subsequent answer, changes the nature of the suit from one in diversity to one in admiralty—the Court abides by the Fifth Circuit's reasoning that the plaintiff's original election, if clear, controls.[104] To decide otherwise would suggest that any defendant seeking to avoid a jury trial could simply plead its counterclaim in admiralty to strip the plaintiff of its constitutional right to trial by jury. Such an obvious workaround would violate the well-established maxim that "the plaintiff is the master of the complaint."[105]

Finally, Balkan's argument that Marquette's amended complaint demonstrates its intent to proceed in this Court's admiralty jurisdiction is misplaced for two independent reasons. First, in the amended complaint, Marquette "reallege[d] and re-aver[red] all allegations of its original complaint and third-party complaint as fully and completely as if copied herein in extenso,"[106] thereby retaining its original claim against Balkan and the attendant jury trial right. The amended complaint merely added the M/V STRANDJA as an *in rem* defendant,[107] a separate claim

---

*Luera* makes clear that jurisdiction is evaluated individually for each claim.

[103] 614 F.2d 509, 511 (5th Cir. 1980).

[104] *Id.* at 510–11.

[105] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987); *see also Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 809, n. 6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced").

[106] *Id.* at 1 (internal citations omitted).

[107] Rec. Doc. 29.

available exclusively in the admiralty jurisdiction of this federal Court.[108] Second, the amended complaint was later dismissed pursuant to Federal Rule of Civil Procedure 41(a) and therefore has no bearing on Marquette's present legal position.[109]

Because Marquette unequivocally expressed its intent to proceed pursuant to this Court's diversity jurisdiction with respect to its claims against Balkan, the Court finds that Marquette's Seventh Amendment right to a jury trial on its claims against Balkan is unaffected by subsequent pleadings.

### *C. Whether Balkan's Counterclaims Should be Tried by a Jury*

In the opposition memorandum, Marquette also urges the Court to exercise its judicial discretion to order that Marquette's claims and Balkan's counterclaims be tried by a jury to "avoid the inefficiencies of a bifurcated trial."[110] Balkan does not address this issue in its memorandum in support of the motion to strike jury demand or its reply memorandum.[111] Although there is no constitutional prohibition against jury trials in admiralty cases,[112] "[t]he question of the availability of jury trials in admiralty is unduly complex."[113] Marquette has not filed a motion requesting that all claims be tried by a jury. Instead, Marquette only raises the issue in its opposition to the instant motion. Therefore, the Court declines to rule on this issue until it is

---

[108] *Madruga v. Superior Court*, 346 U.S. 556, 560 (1954); *see also Luera*, 635 F.3d at 192 n. 6 (noting that that "although Luera did use admiralty procedures for her *in rem* claims, she did not use the benefits of admiralty procedures for the *same claim* on which she now demands a jury trial") (emphasis in original).

[109] *LeCompte*, 528 F.2d 601 at 603 (internal citations omitted).

[110] Rec. Doc. 60 at 19.

[111] *See* Rec. Doc. 56-1; Rec. Doc. 64.

[112] *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 20 (1963) ("While this court has held that the Seventh Amendment does not require jury trials in admiralty cases, neither that amendment nor any other provision of the Constitution forbids them.")

[113] 2 Admiralty & Mar. Law § 21:10 (5th ed.).

presented in a properly filed motion.

**V. Conclusion**

Considering the foregoing reasons, Marquette has preserved its Seventh Amendment jury trial right for its *in personam* claims against Balkan. The presence of admiralty claims in this same action does not defeat that right. Accordingly,

**IT IS HEREBY ORDERED** that Balkan's motion to strike jury demand is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this 1st day of October, 2020.

Nannette Jolivette Brown

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**