# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, LLC** | * | **CIVIL ACTION** |
| | * | **NO. 19-10927** |
| **VERSUS** | | |
| | * | **SECTION "G" (2)** |
| **NAVIGATION MARITIME BULGAREA;** | | |
| **and BALKAN NAVIGATION LTD.** | * | **JUDGE BROWN** |
| * * * * * * * * | * | **MAG. CURRAULT** |

# MARQUETTE'S MEMORANDUM IN SUPPORT OF
# MOTION FOR PARTIAL SUMMARY JUDGMENT

1

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................................3

II.  BACKGROUND ..................................................................................................................4

    A.    The Casualty. ..............................................................................................................4

    B.    The Uncontested Material Facts: ...............................................................................8

III. LAW ...................................................................................................................................12

    A.    The issue before this Honorable Court is ripe for partial summary
        judgment. ..................................................................................................................12

    B.    A vessel is restricted in her ability to maneuver under Rule 18 only
        when she satisfies the definition provided in Rule 3(g) and displays
        the signals prescribed by Rule 27(b). ......................................................................12

IV.  ANALYSIS ........................................................................................................................15

    A.    STRANDJA did not qualify as a Rule 18 vessel restricted in her
        ability to maneuver because she was not engaged in any type of
        "work" that restricted her ability to maneuver as required by Rule
        3(g). ..........................................................................................................................15

    B.    STRANDJA does not qualify as a Rule 18 vessel restricted in her
        ability to maneuver because she was unable to keep out of the way
        as required by Rule 3(g). .........................................................................................18

    C.    The Rule 18 does not apply to STRANDJA because she did not
        display the ball diamond ball day shape as required by Rule 27(b). ......................18

V.   CONCLUSION...................................................................................................................19

MAY IT PLEASE THE COURT:

Marquette Transportation Company Gulf-Inland, LLC ("Marquette"), submits the following memorandum in support of its motion for partial summary judgment requesting that this Honorable Court enter partial summary judgment in its favor that the M/V STRANDJA was not a Rule 18 vessel restricted in her ability to maneuver at the time of the collision.

## I. INTRODUCTION

This maritime collision case involves an oceangoing ship, STRANDJA, making a sudden unannounced maneuver out of a designated anchorage and into the navigable channel where Marquette's towing vessel KIEFFER E BAILEY was navigating. This motion concerns a legally erroneous attempt by Balkan[1] to classify STRANDJA as a vessel restricted in her ability to maneuver under Inland Navigation Rule 18 as an excuse for its negligent actions. Marquette files this motion because there is no factual or legal support for this position. Indeed, STRANDJA's Master, Pilot and corporate representative all testified that STRANDJA was not a Rule 18 vessel restricted in her ability to maneuver. Marquette is entitled to partial summary judgment that Rule 18 does not apply to STRANDJA for the following reasons:

1. **Not engaged in any work that restricted maneuverability.** To qualify as a Rule 18 vessel restricted in her ability to maneuver, a vessel must be restricted in its ability to maneuver due to the nature of its work. It is undisputed STRANDJA was not engaged in any type of work that restricted her ability to maneuver. Rule 18 cannot apply to STRANDJA as a result.

2. **Able to keep out of the way.** To qualify as a Rule 18 vessel restricted in her ability to maneuver, a vessel must be unable to keep out of the way of another vessel. It is undisputed that STRANDJA was able to keep out of the way because no one disputes she could have simply delayed her intentional starboard swing movement until after KIEFFER E BAILEY passed. Rule 18 cannot apply as a result.

---

[1] Marquette collectively refers to Balkan Navigation Ltd. and Navigation Maritime Bulgare JSC as "Balkan" in this motion.

3. **Never displayed ball diamond ball.** To qualify as a Rule 18 vessel restricted in her ability to maneuver, a vessel must display the restricted maneuverability signals prescribed by Rule 27(b). It is undisputed STRANDJA was not displaying the Rule 27(b) required ball diamond ball day shapes during the incident. Consequently, even if STRANDJA could qualify as a vessel restricted in her ability to maneuver (she cannot), Rule 18 still could not apply.

## II. BACKGROUND

### A. The Casualty

*Summary of the casualty:*

On January 3, 2019, Marquette's towing vessel, KIEFFER E BAILEY, was pushing six barges down the middle of the Mississippi River, having just passed Algiers Point and nearing Chalmette, Louisiana. As KIEFFER E BAILEY and her tow were proceeding down the middle of the river near Mile Marker 90, the STRANDJA, with the harbor tug PROVIDENCE alongside her bow, inexplicably and completely unannounced began topping around out of her designated anchorage (General Anchorage) on the right descending bank (West Bank). The STRANDJA entered directly into the established navigational path of the downbound KIEFFER E BAILEY and her tow, contrary to good seamanship and in direct violation of the Inland Rules of the Road. Immediately, the KIEFFER E BAILEY radioed STRANDJA on Channel 67 to inform the STRANDJA of her unsafe navigation. But neither the pilot onboard nor the master or other navigation officer on watch of the STRANDJA responded, which reflects the vessel's lack of attentiveness to its obligations and improper bridge team communication. The KIEFFER E BAILEY immediately attempted to attract the STRANDJA's attention by whistle/radio and attempted to steer away from the STRANDJA. However, the STRANDJA kept moving broadside in the Mississippi River directly into the path of the downbound KIEFFER E BAILEY, ultimately striking her tow and causing a collision.

PD.34417483.1

The objective AIS data, as depicted in the Mississippi River Traffic Information System ("MRTIS") screen shot below, establishes that STRANDJA is solely at fault for the collision due to her sudden and unannounced reckless jumping maneuver out of the designated General Anchorage (dark shaded area) into the center of the river and KEIFFER E BAILEY's path. As shown below, STRANDJA was moving rapidly to starboard into the KIEFFER BAILEY when the collision occurred.



A video of the collision can be viewed here: https://youtu.be/8I9hRUysLuw and is attached as Exhibit 1.

The Voyage Data Recorder ("VDR") data from STRANDJA can be viewed here: https://youtu.be/gjA2uUVDOjs and is attached as Exhibit 2.

*Events leading up to casualty:*

At 1058 hours, Marquette's KIEFFER E BAILEY was transiting downriver and made a security VHF radio announcement to all vessel traffic that she just had cleared the GNO Bridge with her six (6) barge tow.[2]

At 1110 hours, a pilot boat arrived alongside the STRANDJA carrying Crescent River Pilot, Robert Johnson. Pilot Johnson shouted from the pilot boat to the STRANDJA's Chief Officer (who was standing on the STRANDJA's deck near the gangway) to commence heaving the anchors. The Chief Officer informed the Master (who was on the Navigation Bridge), via the ship's walkie talkie of Pilot Johnson's request. The Chief Officer was instructed by the Master to wait until Pilot Johnson got to the bridge to start heaving anchors.

Meanwhile, Crescent tugs PROVIDENCE and POINT CLEAR arrived on location to assist with STRANDJA's departure.

On arriving at the navigation bridge at approximately 11:16:38 hours, Pilot Johnson advised the Master to heave in the STRANDJA's port anchor.[3] At 11:17:25 hours, Pilot Johnson stated, "alright, tell them to go as quick as possible." [4] At 11:18:31 hours, there was a discussion between the Master and Pilot Johnson about whether to use both Crescent tugs that were standing by to assist. The Master informed Pilot Johnson that only one tug was needed because STRANDJA

---

[2] Exhibit 2, VDR Data and Transcript at 16:58:17 ("KIEFFER BAILEY southbound just cleared the GNO bridge going to be coming down on Algiers Point shortly, six loads. KIEFFER BAILEY"). Note – the VDR data and transcripts are in Greenwich Mean Time (+6). Simply subtract six hours to get to New Orleans (CDT) time.

[3] Exhibit 2, VDR Data and Transcript at 17:16:38 ("Hello, how are you? Can we heave port anchor?").

[4] *Id.* at 17:17:25.

had a bow thruster. Subsequently, Pilot Johnson asked the POINT CLEAR to leave and instructed the PROVIDENCE to get on STRANDJA's port bow.[5]

At 1120 hours, the Master confirmed with the Third Officer that the engine was ready. At 1121 hours, the Master testified that he alerted Pilot Johnson regarding the KIEFFER E BAILEY coming downriver. The Master instructed the Third Officer to activate the bow thruster pump to make sure it was available if required.[6]

At 11:22:51 hours, Pilot Johnson's cell phone rang and he answered a call from a Mr. Zachary Harvey. At approximately 11:23 hours, the PROVIDENCE came alongside STRANDJA's port bow.[7]

At 11:24:22 hours, Pilot Johnson asked to start heaving in the starboard anchor. STRANDJA's Master and crew executed this request.[8] In response to this command, the STRANDJA's bow started swinging to starboard towards her starboard anchor in the navigable channel where KIEFFER E BAILEY was navigating.[9]

Around 11:25:12 hours, the KIEFFER E BAILEY steered hard to port away from STRANDJA and attempted to radio the STRANDJA on the VHF because the STRANDJA was starting to visibly swing into the navigable channel. At 11:25:27 hours, the KIEFFER E BAILEY started sounding her whistle in an effort to attract the attention of STRANDJA. No one aboard STRANDJA ever responded to KIEFFER BAILEY's radio call or whistle signals. All through

---

[5] Exhibit 2, VDR Data and Transcript between 17:18:31 and 17:20.

[6] *Id*. between 1720 and 1722.

[7] *Id.* at 17:22:51.

[8] *Id.* between 17:24:22 and 17:24:24.

[9] *Id.* between 17:24:22 and 17:27 (see VDR radar feed depicting movements).

these actions by the KIEFFER E BAILEY, Pilot Johnson can still be heard to be talking on his phone.[10]

At 11:25:46 hours, the Master alerted Pilot Johnson of the approaching KIEFFER E BAILEY, but, Pilot Johnson responded "It's fine. It's fine."[11] At 11:26:01 hours, the Master informed Pilot Johnson, "Tugboat touching us" and at 11:26:05 hours, Pilot Johnson requested dead slow astern on the vessel's main engine. Subsequent main engine movements of slow astern followed by stop were given.[12]

Between 11:26:30 and 11:27:00, the STRANDJA's starboard bow struck the starboard side of the KIEFFER E BAILEY's tow near the middle of the Mississippi River.[13] At 11:27:06 hours, Pilot Johnson ordered STRANDJA to stop heaving in the starboard anchor.[14]

B.     **The Uncontested Material Facts**

On January 3, 2019, STRANDJA was not *a vessel restricted in her ability to maneuver* as defined by Inland Navigation Rule 3(g).[15] STRANDJA was and presently is a bulk carrier that

---

[10] Exhibit 2, VDR Data and Transcript between 17:25:12 and 17:27.

[11] *Id.* at 17:25:46 and 17:25:48.

[12] *Id.* between 17:26:01 and 17:26:06.

[13] *Id. See also* MRTIS screen shot provided above.

[14] *Id.* at 17:27:05.

[15] Exhibit 3, Testimony of Pilot Robert Johnson – 287:1-9 (Q: "But you can't say whether or not you – you fall into the definition of Rule 3 as you sit here and read it; correct?" A: "No"; Q: "Okay. And so because of that, under Rule 18, Rule 18 did not apply; correct?" A: "As far as I am concerned, no."); Exhibit 4, Testimony of STRANDJA's Master Kiril Karapanov - 334:25-338:23 (Q: "Captain, you were not a vessel restricted in its ability to maneuver as that term is used in Rule 3(g); were you?" A: "I haven't told that we fulfill these requirements… I did not qualify according to this rule."); Exhibit 5, Testimony of Balkan corporate representative Mariyan Grozdev – 40:23-41:24 (Q. "Was the STRANDJA a vessel restricted in her ability to maneuver which was required to display the ball diamond ball shape described in Rule 27(b), subsection 2?" A. "My answer is no, because STRANDJA is not a vessel restricted in her ability to maneuver.").

8

transports cargo for money.[16] At the time of the incident, STRANDJA was attempting to depart the General Anchorage and was not performing any type of work that restricted her ability to maneuver.[17] STRANDJA did not display the ball diamond ball day shape prescribed by Rule 27(b),[18] and Balkan's corporate representative testified that STRANDJA was not required to so because STRANDJA was not a *vessel restricted in her ability to maneuver*.[19] STRANDJA's Master Kiril Karapanov testified that the STRANDJA was not *a vessel restricted in her ability to maneuver* under the Navigational Rules.[20] Balkan corporate representative Mariyan Grozdev testified that STRANDJA was not a vessel *restricted in her ability to maneuver* under the Navigational Rules.[21] STRANDJA's Pilot Robert Johnson also testified that the STRANDJA was not *a vessel restricted in her ability to maneuver* under the Navigational Rules.[22] So, all STRANDJA witnesses confirmed that STRANDJA was not a Rule 3(g) vessel restricted in her ability to maneuver. Here are excerpts from their respective testimony:

**STRANDJA's Master Kiril Karapanov:**

> Q. Captain, you were not a vessel restricted in its ability to maneuver as that term is used in Rule 3(g); were you?

---

[16] See Marquette's Uncontested Fact No. 7.

[17] Exhibit 3 Testimony of Pilot Robert Johnson – 284:3-6 (Q: "What was the nature of the work that the STRANDJA was doing that restricted her ability to maneuver?" A: "There was no work.");

[18] Exhibit 1, Incident Video confirming no ball diamond ball day shapes were shown from the STRANDJA.

[19] Exhibit 5 Testimony of Balkan corporate representative Mariyan Grozdev –44:4-11.

[20] Exhibit 4, Testimony of STRANDJA's Master Kiril Karapanov - 334:25-338:23.

[21] Exhibit 5, Testimony of Balkan corporate representative Mariyan Grozdev – 40:23-41:24 (Q. "Was the STRANDJA a vessel restricted in her ability to maneuver which was required to display the ball diamond ball shape described in Rule 27(b), subsection 2"? A. "My answer is no, because STRANDJA is not a vessel restricted in her ability to maneuver.")

[22] Exhibit 3, Testimony of Pilot Robert Johnson – 284:3-287:9

A. I haven't told that we fulfill these requirements. I just want to say that when a ship is at anchorage – I just wanted to say that the ship was at anchorage at that moment, and we were restrained in our abilities to maneuver speed and course. But I did not clarify, and I did not determine that we are a ship restrained in our ability to maneuver under that rule. I did not qualify – I did not qualify the ship as a vessel restrained in its ability to maneuver. The ship was at anchorage. I did not qualify according to this rule.

Q. Understood, Captain. And I just want to be – I just want to make sure we understand. I just want to make –

A. I just want to say that – I just want to say that because the ship was at anchorage, it could not change its speed and course to make space for another vessel.

Q. Can you tell the Court, yes or no, was the STRANDJA, prior to collision, a Rule 3(g) vessel restricted in her ability to maneuver?

A. STRANDJA was at anchorage.

Q. So she was not a Rule 3(g) vessel restricted in her ability to maneuver; correct?

A. Yes, I haven't told that. [23]

**STRANDJA's Pilot Robert Johnson:**

Q. What was the nature of the work that the STRANDJA was doing that restricted her ability to maneuver?

A. There was no work.[24]

*****

Q. Rule 18 did not apply; correct?

A. Far as I am concerned, no. [25]

---

[23] Exhibit 4, Testimony of STRANDJA's Master Kiril Karapanov – 336:19-338:23.

[24] Exhibit 3, Testimony of Pilot Robert Johnson – 284:3-7.

[25] Exhibit 3, Testimony of Pilot Robert Johnson - 287:7-8.

10

**Balkan corporate representative Mariyan G. Grozdev:**

Q. Was the STRANDJA a vessel restricted in her ability to maneuver which was required to display the ball diamond ball shape described in Rule 27(b), subsection 2?

A. My answer is no, because STRANDJA is not a vessel restricted in her ability to maneuver.[26]

STRANDJA was able to keep out of the way of the KIEFFER E. BAILEY. Those aboard STRANDJA could have delayed the intentional movement to starboard until after the KIEFFER E BAILEY safely passed. The heave starboard anchor command at 11:24:24 caused STRANDJA to move several hundred feet outside of the General Anchorage and into the navigable channel where KIEFFER E BAILEY was navigating.[27] This is because SRANDJA's starboard anchor had been dropped approximately 300 feet outside of the General Anchorage the day before on January 2, 2019.[28] When those aboard STRANDJA started to heave in the starboard anchor, STRANDJA started to move to starboard towards the starboard anchor (and near the center of the River).[29] Had the crew of the STRANDJA simply delayed heaving the starboard anchor until after KIEFFER E BAILEY passed, there would have been over 400 feet between STRANDJA and KIEFFER E BAILEY at the time of passing.

---

[26] Exhibit 5, Testimony of Balkan corporate representative Mariyan Grozdev – 40:23-41:24.

[27] Exhibit 3, Testimony of Pilot Robert Johnson – 157:1-6 ("When you're heaving anchors like that, you're sucking the ship towards the anchor"), 159:21-160:2 ("When you heave on anchors.. she's gonna [sic] pull towards that Anchor. And it depends on where the pilot dropped his anchor that was on the ship before you…"), 223:14-224:3 (Q: "Isn't it true that you moved several hundred feet outside of General Anchorage?" A: "Yes...") Further, see Exhibit 2, STRANDJA VDR Data and Transcript between 17:24:24 and 17:27:00.

[28] Balkan confirms this undisputed fact in it is Rule 26 disclosures.

[29] Exhibit 3, Testimony of Pilot Robert Johnson – 157:1-6 ("When you're heaving anchors like that, you're sucking the ship towards the anchor"), 159:21-160:2 ("When you heave on anchors…she's gonna [sic] pull towards that Anchor. And it depends on where the pilot dropped his anchor that was on the ship before you..."), 223:14-224:3 (Q: "Isn't it true that you moved several hundred feet outside of General Anchorage?" A: "Yes…") Further, see Exhibit 2, STRANDJA VDR Data and Transcript between 17:24:24 and 17:27:00.

### III. LAW

#### A. The issue before this Honorable Court is ripe for partial summary judgment.

Summary judgment is proper when the pleadings and evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[30] A "material fact" is a fact which, under applicable law, may alter the outcome of the suit.[31] "Factual disputes that are irrelevant or unnecessary will not be counted."[32]

Considering the undisputed testimony of STRANDJA and Balkan's own fact witnesses and the complete absence of any genuine issues of material fact, it is respectfully submitted that summary judgment is appropriate in this matter.

#### B. A vessel is restricted in her ability to maneuver under Rule 18 only when she satisfies the definition provided in Rule 3(g) and displays the signals prescribed by Rule 27(b).

Rule 18 only applies in unique situations where vessels satisfy specific statutorily defined situations.[33] Inland Navigation Rule 18 "Responsibilities between vessels" provides:

Except where Rules 9, 10, and 13 (§§ 83.09, 83.10, and 83.13) otherwise require:

(a) A power-driven vessel underway shall keep out of the way of:
    (i)    A vessel not under command;
    (ii)   A vessel restricted in her ability to maneuver;
    (iii)  A vessel engaged in fishing;
    (iv)  A sailing vessel.
(b) A sailing vessel underway shall keep out of the way of:
    (i)    A vessel not under command;
    (ii)   A vessel restricted in her ability to maneuver; and
    (iii)  A vessel engaged in fishing.

---

[30] *Allstate Ins. Co. v. Disability Servs. of the Southwest, Inc.*, 400 F.3d 260, 263 (5th Cir. 2005) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[31] *Anderson v. Liberty Lobby*, 477 U.S. 247, 248 (1986).

[32] *Id.*

[33] 33 C.F.R. § 83.18.

(c) A vessel engaged in fishing when underway shall, so far as possible, keep out of the way of:
  (i) A vessel not under command; and
  (ii) A vessel restricted in her ability to maneuver.
(d) [Reserved]
(e) A seaplane on the water shall, in general, keep well clear of all vessels and avoid impeding their navigation. In circumstances, however, where risk of collision exists, she shall comply with the Rules of this Subpart (Rules 4-19) (§§ 83.04 through 83.19); and
(f)
  (i) a WIG craft shall, when taking off, landing and in flight near the surface, keep well clear of all other vessels and avoid impeding their navigation; and
  (ii) a WIG craft operating on the water surface shall comply with the Rules of this Subpart (Rules 4-19) (§§ 83.04 through 83.19) as a power-driven vessel.

To qualify as a vessel restricted in her ability to maneuver, a vessel must satisfy the specific definition of that term.[34] The term "restricted in her ability to maneuver" "is a term of art that has been defined by Congress in a specific way."[35] The definition is provided by Inland Navigation Rule 3(g)[36] "Definitions," which provides:

For the purpose of these Rules and Subchapter E, except where context otherwise requires:

(g) The term *vessel restricted in her ability to maneuver* means a vessel which, from the nature of her work, is restricted in her ability to maneuver as required by these Rules and is therefore unable to keep out of the way of another vessel. The term vessels restricted in their ability to maneuver include, but are not limited to:
  (i) A vessel engaged in laying, servicing, or picking up a navigation mark, submarine cable, or pipeline;
  (ii) a vessel engaged in dredging, surveying, or underwater operations;
  (iii) a vessel engaged in replenishment or transferring persons, provisions, or cargo while underway;
  (iv) a vessel engaged in the launching or recovery of aircraft;
  (v) a vessel engaged in mine clearance operations;
  (vi) a vessel engaged in a towing operation such as severely restricts the towing vessel and her tow in their ability to deviate from their course.

---

[34] 33 C.F.R. § 83.03.

[35] *Garrett v. Higgenbotham*, 800 F.2d 1537, 1539 (11th Cir. 1986).

[36] 33 C.F.R. § 83.03(g)

So, to qualify as a vessel restricted in her ability to maneuver, a vessel's maneuverability must be restricted by "the nature of her work."[37] Restrictions due to other causes unrelated to the vessel's work do not qualify.[38] Further, the vessel must in fact be restricted in her ability to maneuver and unable to keep out of the way of another vessel.[39]

Even when a vessel qualifies as a Rule 3(g) vessel restricted in her ability to maneuver, Rule 18 only applies when the vessel displays the signals prescribed by Rule 27(b).[40] Inland Navigation Rule 27(b) provides:

> (b)     A vessel restricted in her ability to maneuver, except a vessel engaged in mine clearance operations, shall exhibit:
> (i)     Three all-round lights in a vertical line where they can best be seen. The highest and lowest of these lights shall be red and the middle light shall be white;
> (ii)     Three shapes in a vertical line where they can best be seen. The highest and lowest of these shapes shall be balls and the middle one a diamond;
> (iii)     When making way through the water, a masthead light or lights, sidelights and a sternlight, in addition to the lights prescribed in paragraph (b)(i) of this Rule; and
> (iv)     When at anchor, in addition to the lights or shapes prescribed in paragraphs (b)(i) and (ii) of this Rule, the light, lights or shapes prescribed in Rule 30 (§ 83.30).

So, under Rule 27(b), a vessel restricted in her ability to maneuver must display the ball diamond ball shapes during the day and red white red white lights at night.[41] A graphic depicting the orientation of these lights and shapes is provided in the screen shot below:

---

[37] *Garrett v. Higgenbotham*, 800 F.2d 1537, 1539 (11th Cir. 1986) (citing 33 U.S.C.A. § 2003(g) which was later recodified as 33 CFR § 83.03(g)).

[38] *Id.*

[39] 33 C.F.R. § 83.03(g) ("and is …unable to keep out of the way of another vessel")

[40] 33 C.F.R. § 83.27(b).

[41] *Id.*



Vessel Restricted in Ability to Maneuver Dayshape and Lights

In sum, Rule 18 only applies when a vessel meets the definition of Rule 3(g) and displays the signals required by Rule 27(b).

## IV. ANALYSIS

### A. STRANDJA did not qualify as a Rule 18 vessel restricted in her ability to maneuver because she was not engaged in any type of "work" that restricted her ability to maneuver as required by Rule 3(g).

Balkan cannot satisfy the definition set forth in Rule 3(g) because STRANDJA was not engaged in any work activity that restricted her ability to maneuver. To qualify as a vessel restricted in her ability to maneuver, a vessel's maneuverability must be restricted by "the nature of her work."[42] Restrictions from other causes do not qualify.[43] The plain language of Rule 3(g) confirms this, as all six examples listed in Rule 3(g) involve vessels "**whose work activities** restrict their maneuverability."[44] Here, STRANDJA cannot meet the "nature of her work" requirement because she was simply a ship that was attempting to depart the Mississippi River at the time of the collision. STRANDJA's Pilot Johnson confirmed that "**There was no work**" when he was questioned about Rule 3(g) and specifically asked whether there was any "work" that restricted

---

[42] *Garrett v. Higgenbotham*, 800 F.2d 1537, 1539 (11th Cir. 1986) (citing 33 U.S.C.A. § 2003(g) which was later recodified by 33 CFR 83.03(g)).

[43] *Id.*

[44] *Garrett v. Higgenbotham*, 800 F.2d 1537, 1539 n.4 (11th Cir. 1986).

STRANDJA's maneuverability.[45] STRANDJA's Master confirmed same in his deposition, testifying that STRANDJA "did not qualify" as a Rule 3(g) vessel restricted in her ability to maneuver. Balkan corporate representative Mariyan Grozdev did the same testifying "STRANDJA is not a vessel restricted in her ability to maneuver."[46]

Despite the above testimony and its own corporate testimony to the contrary, Balkan's legal team posits that if it can somehow create an issue of fact that STRANDJA's maneuverability was restricted in some way, then it can point to Rule 18 at trial as an excuse for Balkan's negligent actions. Balkan is wrong.

In *Garrett v. Higgenbotham*, for example, the Eleventh Circuit vacated the district court's decision to classify a shrimp trawler as a vessel restricted in her ability to maneuver. The trawler's outrigger was down but not fishing at the time of her collision with a sailing vessel.[47] While the issue was presented in a different context, the Eleventh Circuit's rejection of the district court's vessel classification is on point. In that case, the district court erroneously classified the trawler as a Rule 3(g) vessel restricted in her ability to maneuver and faulted the trawler for not displaying the Rule 27(b) signal because the trawler claimed at trial its maneuverability was generally restricted due to it only being able to navigate in a marked channel at the time of collision.[48] The Eleventh Circuit properly found that a general claim of restricted maneuverability does not satisfy the specific definition of Inland Navigation Rule 3(g) nor trigger the other navigation rules relating

---

[45] Exhibit 3, Testimony of Pilot Robert Johnson – 284:3-7.

[46] Exhibit 5, Balkan corporate representative Mariyan Grozdev – 41:23-24.

[47] *Garrett v. Higgenbotham*, 800 F.2d 1537, 1538.

[48] *Id.* at 1538-1539. ("The district court considered these statutes to be applicable and held… 'if Higgenbotham was operating in a narrow channel where he could not maneuver safely, it was incumbent upon him to exhibit a signal which would show that his vessel was restricted in its ability to maneuver.'").

to a vessel restricted in her ability to maneuver. The restriction must be due to the vessel's work for these rules to apply:

> The logic of this view is attractive; but to the extent this holding purport to be an application of § 2027(b), it is in error.
>
> Section 2027(b) does require a vessel "restricted in her ability to maneuver" to display a particular signal; the trawler did claim to be restricted in its navigability; and the trawler did not display the signal required. Nevertheless, the term "vessel restricted in her ability to maneuver" is a term of art that has been defined by Congress in a specific way. In the context of the INRA, the phrase means a vessel "which from the nature of its work is restricted in her ability to maneuver as required by [the INRA] rules." 33 U.S.C.A. § 2003(g) (emphasis added). Reason might suggest that any vessel whose maneuverability is impaired -- regardless of the cause of impairment -- should be statutorily required to display the appropriate warning signal. Nevertheless, from the wording of the INRA, Congress apparently intended otherwise; and we shall not engraft other views on the statute in the face of this specific enactment.
>
> Our reluctance to indulge in judicial innovation as part of statutory interpretation is heightened by the nature of the INRA, itself. The INRA is an elaborate and sophisticated network of interlocking, technical, statutory regulations governing waterborne traffic generally. Moreover, it is based, in large part, on a similar body of international regulations. Evidently, much time, energy and expert thought was invested in the INRA's development by Congress. Especially in light of the history, courts ought to be extremely slow to tamper with this sensitive, regulatory system. This is true even if it seems reasonable, in the context of an isolated case, to extend a definition, such as, that of "vessel restricted in her ability to maneuver," to require signal lights or flags when the statute has not done so. Acting as we must on a case-by-case basis, we are ill prepared to know what the consequences of such innovation might be for the regulatory system and for waterborne traffic in general.[49]

This Court should likewise reject Balkan's invitation to misclassify STRANDJA as a Rule 3(g) vessel restricted in her ability to maneuver. All witnesses testified that STRANDJA was not

---

[49] *Id.*

engaged in any type of work that restricted her ability to maneuver and did not qualify as a Rule 3(g) vessel. Balkan's legal team should not be permitted to flout this testimony and the plain language of Rule 3(g). Rule 18 simply does not apply and Marquette is entitled to partial summary judgment on this issue.

      **B.    STRANDJA does not qualify as a Rule 18 because she was unable to keep out of the way as required by Rule 3(g).**

STRANDJA was able to keep out of the way of the KIEFFER E BAILEY. In order for a vessel to qualify as a Rule 3(g) vessel restricted in her ability to maneuver, the vessel must in fact be restricted in her ability to maneuver and the vessel's restrictions must render her unable to keep out of the way of another vessel. At the time of the collision, STRANDJA was performing an intentional swing maneuver out of the designated General Anchorage and into navigable channel where KIEFFER E BAILEY was navigating. Had STRANDJA simply delayed the intentional swing maneuver, KIEFFER E BAILEY would have safely passed STRANDJA by over 400 feet.

      **C.    The Rule 18 does not apply to STRANDJA because she did not display the ball diamond ball day shape as required by Rule 27(b).**

For Rule 18 to apply, a vessel must display the "restricted in her ability to maneuver" signals required by Rule 27(b).[50] So, even in situations where a vessel could otherwise satisfy the definition of Rule 3(g), a vessel must comply with Rule 27(b) before Rule 18 can apply. This rule makes sense because the objective of Rule 18 – to put other vessels on notice of a potential danger – cannot be achieved if a vessel does not relay her Rule 18 status to other vessels. STRANDJA did not display the Rule 27(b) signals.[51] Consequently, even if STRANDJA qualified as a Rule

---

[50] During the daytime, Rule 27(b) requires vessels restricted in their ability maneuver to display ball diamond ball shapes. At night, Rule 27(b) requires vessels restricted in their ability to maneuver to display red white red lights. *See* the figure provided in Section III(B) above.

[51] Exhibit 5, Testimony of Balkan corporate representative Mariyan Grozdev – 40:23-41:24 (Q. "Was the STRANDJA a vessel restricted in her ability to maneuver which was required to display the ball diamond ball shape

3(g) vessel restricted in her ability to maneuver (she does not), Rule 18 still would not apply because STRANDJA did not display the ball diamond ball day shapes prescribed by Rule 27(b).

## V. CONCLUSION

Balkan's legal team should not be permitted to flout the testimony of its own fact witnesses, the plain language of the Navigational Rules, and common sense. STRANDJA does not qualify as a Rule 18 vessel restricted in her ability to maneuver because her maneuverability was not restricted by any work activity as required by Rule 3(g); she was not unable to keep out of the way of the KIEFFER E BAILEY as required by Rule 3(g); nor was STRANDJA displaying the ball diamond ball days shapes required by Rule 27(b). For these straight forward, undisputed reasons, Marquette is entitled to partial summary judgment.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   */s/ Adam N. Davis*
     Evans Martin McLeod (Bar #24846)
     Adam N. Davis (Bar #35740)
     Canal Place | 365 Canal Street, Suite 2000
     New Orleans, Louisiana 70130
     Telephone: 504 566 1311
     Facsimile: 504 568 9130
     Email: marty.mcleod@phelps.com
     Email: adam.davis@phelps.com

     ATTORNEYS FOR DEFENDANT
     MARQUETTE TRANSPORTATION
     COMPANY GULF-INLAND, LLC

---

described in Rule 27(b), subsection 2"? A. "My answer is no, because STRANDJA is not a vessel restricted in her ability to maneuver.").