UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, LLC** | **CIVIL ACTION** |
| VERSUS | NO. 19-10927 |
| **NAVIGATION MARITIME BULGARE, JSC et al.** | SECTION: "G" |

## ORDER AND REASONS

This litigation arises out of an alleged collision[1] between two vessels in the Mississippi River near Chalmette, Louisiana.[2] Before the Court is Plaintiff's "Motion for Partial Summary Judgment."[3] Plaintiff seeks partial summary judgment on the issue of whether Defendants' vessel, the *M/V Strandja* (the "*Strandja*"), was a vessel restricted in her ability to maneuver pursuant to Inland Navigation Rule ("INR") 18.[4] Defendants Navigation Maritime Bulgare, JSC and Balkan Navigation Ltd. (collectively, "Defendants") and Third-Party Defendant Pilot Robert Johnson ("Johnson") oppose the motion.[5] Having considered the motions, the memoranda in support and opposition, the record, and the applicable law, the Court grants Plaintiff's motion for partial summary judgment and finds that the *Strandja* was not a vessel restricted in her ability to maneuver

---

[1] Defendants use the word allision and collision interchangeably. *Compare* Rec. Doc. 81-2 at 5 (collision), *and* Rec. Doc. 81-4 at 5 (collision), *and* Rec. Doc. 81-5 at 7 (collision), *with* Rec. Doc. 81 at 6, 8, 10 (allision). "[A]n allision occurs when a ship strikes a stationary object while a collision involves two moving vessels or objects." *Trico Marine Assets, Inc. v. Diamond B Marine Servs., Inc.*, 332 F.3d 779, 786 n.1 (5th Cir. 2003). The Court will use collision throughout this Order for consistency.

[2] Rec. Doc. 1.

[3] Rec. Doc. 78.

[4] *Id.* at 1 (citing 33 C.F.R. § 83.18).

[5] Rec. Docs. 81, 84.

under INR 18.

## I. Background

According to the Complaint, on January 3, 2019, Plaintiff's vessel, the *Kieffer Bailey* (the "*Bailey*"), was proceeding down the middle of the Mississippi River near Chalmette, Louisiana when Defendants' vessel, the *Strandja*, allegedly steered directly into the *Bailey*'s navigational path.[6] Plaintiff alleges that Defendants' vessel struck and damaged Plaintiff's vessel.[7] Plaintiff's crewmembers allegedly sustained physical and emotional injuries.[8]

On June 6, 2019, Plaintiff filed a Complaint in this Court against Defendants.[9] On June 21, 2019, Defendant Balkan Navigation Ltd. answered the Complaint and filed a counterclaim against both Plaintiff and the *Bailey* to recover damages incurred by the *Strandja*.[10] On September 11, 2019, Plaintiff answered the counterclaim and filed a third-party complaint against Crescent, the alleged owner of the assist tug, *M/V Providence* (the "*Providence*"), that pulled Defendants' vessel on the date of the collision.[11] Plaintiff also filed a third-party complaint against the pilot of the tug, Robert Johnson.[12]

---

[6] Rec. Doc. 1 at 1–2.

[7] *Id.* at 3.

[8] *Id.*

[9] *Id.* at 1.

[10] Rec. Doc. 6.

[11] Rec. Doc. 17 at 11.

[12] *Id.* at 6.

## II. Parties' Arguments

### A.    *Plaintiff's Arguments in Support of Partial Summary Judgment*

Plaintiff seeks summary judgment on the issue of whether Defendants' vessel, the *Strandja*, was restricted in her ability to maneuver under INR 18.[13] Plaintiff submits that "[a] vessel is restricted in her ability to maneuver under Rule 18 only when she satisfies the definition provided in Rule 3(g) and displays the signals prescribed by Rule 27(b)."[14] Plaintiff asserts that the undisputed facts establish: (1) the *Strandja* was not engaged in any work that restricted her maneuverability under Rule 3(g); (2) the *Strandja* was able to keep out of the way of other vessels under Rule 3(g); and (3) the *Strandja* never displayed the "ball diamond ball" signal indicating she was restricted in her maneuverability under Rule 27(b).[15] Thus, according to Plaintiff, the *Strandja* was not restricted in her ability to maneuver under INR 18.

Plaintiff advances three arguments in support of summary judgment. First, Plaintiff argues that under Rule 3(g), for a vessel to be restricted in her ability to maneuver, that "vessel's maneuverability must be restricted 'by the nature of her work.'"[16] Plaintiff contends that the *Strandja* "cannot meet the 'nature of her work' requirement because she was simply a ship that was attempting to depart the Mississippi River at the time of the collision."[17] In support, Plaintiff points to Pilot Johnson's deposition testimony that the *Strandja* was not engaged in any work at

---

[13] Rec. Doc. 78.

[14] Rec. Doc. 78-4 at 12.

[15] *Id.* at 3–4.

[16] *Id.* at 15 (quoting *Garrett v. Higgenbotham*, 800 F.2d 1537, 1540 (11th Cir. 1986) (citing 33 U.S.C. § 2003(g) (recodified at 33 C.F.R. § 83.03(g)))).

[17] *Id.* at 15.

3

the time of the collision.[18] Further, Plaintiff avers that the *Strandja*'s Master, Kiril Karapanov, and Balkan's corporate representative, Mariyan Grozdev, each testified that the *Strandja* "did not qualify" as a vessel restricted in her ability to maneuver under Rule 3(g).[19] Thus, Plaintiff asserts that the *Strandja* "was not engaged in any type of work that restricted her ability to maneuver and did not qualify as a Rule 3(g) vessel."[20]

Second, Plaintiff argues that the *Strandja* was not restricted in her ability to maneuver as required by Rule 3(g).[21] Plaintiff asserts that, to qualify under Rule 3(g), "[a] vessel must in fact be restricted in her ability to maneuver and the vessel's restrictions must render her unable to keep out of the way of another vessel."[22] Plaintiff avers that, at the time of the collision, the *Strandja* "was performing an intentional swing maneuver," and had the *Strandja* delayed the maneuver, the *Bailey* would have passed safely.[23]

Third, Plaintiff argues that Rule 18 does not apply to the *Strandja* because she did not display the requisite signals under Rule 27(b).[24] Plaintiff contends that, "[f]or Rule 18 to apply, a vessel must display the 'restricted in her ability to maneuver' signals required by Rule 27(b)."[25] Plaintiff asserts that the *Strandja* did not display the Rule 27(b) signals, and therefore is not a Rule

---

[18] *Id.* at 14–15. *See also* Rec. Doc. 78-5 at 15 (Ex. 3 Dep. of Pilot Robert B. Johnson).

[19] Rec. Doc. 78-4 at 15–16. *See also* Rec. Doc. 78-5 at 23 (Ex. 4 Dep. of Kiril Karapanov); *id.* at 27 (Ex. 5 Dep. of Mariyan Grozdev).

[20] Rec. Doc. 78-4 at 17–18.

[21] *Id.* at 18.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

4

18 vessel restricted in her ability to maneuver.[26]

B.  *Defendants' Arguments in Opposition to Partial Summary Judgment*

In opposition,[27] Defendants argue that whether the *Strandja* was restricted in her ability to maneuver is "an obvious fact issue" that "is for the jury to decide."[28]

Defendants aver that no party disputes that at the time of the collision, the *Strandja*'s starboard anchor was still on the river bottom.[29] Instead, Defendants explain that the disputed issue "is whether being secured by its starboard anchor restricted the *Strandja*'s ability to maneuver such that Rule 18 applies."[30] Defendants contend that Rule 18's "nature of her work" requirement extends to vessels engaged in un-anchoring operations.[31] In support, Defendants point to the statute's language that "vessels restricted in their ability to maneuver *include, but are not limited to*."[32] The statute goes on to enumerate examples of work that restricts a vessel's ability to maneuver, but Defendants contend that this list is "illustrative, not exclusive."[33]

Defendants argue that genuine issues of material fact exist as to whether the *Strandja* was a vessel restricted in her ability to maneuver under Rule 18.[34] In support, Defendants assert that

---

[26] *Id.*

[27] Defendants object to Plaintiff's Exhibit 2, a YouTube link to the *Strandja*'s Voyage Data Recorder ("VDR") data and a transcript of the VDR audio. Rec. Doc. 81 at 2–3. The Court, in reaching its decision, need not consider this evidence.

[28] *Id.* at 1.

[29] *Id.* at 1–2.

[30] *Id.*

[31] *Id.* at 6–7.

[32] *Id.* at 6 (quoting 33 C.F.R. § 83.03(g) (emphasis added)).

[33] *Id.* at 7.

[34] *Id.* at 6.

5

Kiril Karapanov, Master of the *Strandja*, testified that when a vessel is anchored, its maneuverability is very restrained.[35] Likewise, Defendants assert that Pilot Johnson testified that a vessel is restricted in its ability to maneuver "with an anchor down."[36] Defendants also offer testimony from their expert, Captain Allen J. Gibbs, that "the *Strandja* was unquestionably a vessel restricted in her ability to maneuver under the [INR]."[37] And Defendants argue that Mariyan Grozdev is one of five different corporate representatives that testified at Defendants' corporate deposition. Moreover, Defendants aver that Mr. Grozdev "was not on board the vessel at the time of the [collision] and acknowledged that he was 'not familiar with the current of [the] Mississippi River.'"[38]

Defendants also dispute Plaintiff's assertion that the *Strandja* was performing an "intentional swing maneuver."[39] Instead, Defendants assert that Pilot Johnson explained that vessels naturally turn toward the starboard anchor once a vessel has retrieved its port anchor.[40] The extent of this movement, Pilot Johnson testified, is "dependent on several factors such as winch speed, current speed, and amount of mud on the anchor."[41] Defendants aver that this movement "cannot be helped" and that "[e]xperienced, competent mariners know to expect such

---

[35] *Id.* at 8–9. *See also* Rec. Doc. 81-2 at 6–7 (Ex. A Dep. of Kiril Karapanov).

[36] Rec. Doc. 81 at 10.

[37] *Id.* at 10.

[38] *Id.* (quoting Rec. Doc. 81-6 at 4 (Ex. E Dep. of Mariyan G. Grozdev)).

[39] *Id.* at 11.

[40] *Id.*

[41] *Id. See also* Rec. Doc. 81-4 at 5 (Ex. C Dep. of Pilot Johnson).

movement."[42] Moreover, Defendants argue that the *Bailey* "could plainly see that the *Strandja*'s port anchor was up but its starboard anchor was still in the water."[43] Therefore, Defendants contend that the *Bailey* should have anticipated the *Strandja* turning out of its anchorage.[44]

Defendants argue that Plaintiff misreads the requirements for Rule 18.[45] Defendants assert that the plain language of Rule 18 does not require the display of signals listed in Rule 27(b) in order for Rule 18 to apply. Additionally, Defendants assert that the *Strandja* was displaying her anchor ball at the time of the collision. Defendants contend that "[t]he anchor ball conveys the same message as the day shape required by Rule 27(b): that the displaying vessel is restricted in its ability to [maneuver]."[46] Defendants also note that the Master of the *Bailey* acknowledged he was aware the *Strandja*'s starboard anchor was still in the water as he approached.[47] As a result, Defendants submit that "good seamanship" dictated that the *Bailey* make space for the *Strandja*.[48]

Third-Party Defendant Pilot Johnson joins in Defendants' opposition and adopts their arguments as his own.[49]

## C.   *Plaintiff's Arguments in Further Support of Summary Judgment*

In reply, Plaintiff asserts that Defendants have not shown a genuine disputed issue of

---

[42] Rec. Doc. 81 at 11.

[43] *Id.*

[44] *Id.*

[45] *Id.* at 13.

[46] *Id.* at 14.

[47] *Id.*

[48] *Id.*

[49] Rec. Docs. 84, 87.

7

material fact that the *Strandja* was restricted in her ability to maneuver under Rule 3(g).[50] Plaintiff maintains that Rule 3(g) requires a vessel to be restricted in her ability to maneuver from the nature of her work.[51] Plaintiff asserts that the question of whether the *Strandja*'s maneuverability was restricted from her un-anchoring operations is different than the question of whether the *Strandja* was a "vessel restricted in her maneuverability" under Rule 18.[52] According to Plaintiff, the undisputed facts are that Defendants' witnesses all testified that the *Strandja* was not a Rule 18 vessel.[53]

Next, Plaintiff argues Defendants have not offered any facts to put into dispute whether the *Strandja* satisfied the "nature of her work" requirement of Rule 3(g). Plaintiff asserts that "no witness testified that [the] *Strandja* was engaged in any work that restricted her ability to maneuver."[54] Thus, Plaintiff contends that Defendants have failed to put into dispute that the *Strandja* satisfied Rule 3(g)'s "nature of her work" requirement.

Plaintiff also argues that no court has classified a vessel with its anchor in the water as a Rule 18 vessel.[55] In support, Plaintiff asserts that the cases relied on by Defendants all involve vessels engaged in work. According to Plaintiff, this contradicts Defendants' proposed interpretation that Rule 3(g) should be read to include a vessel with its anchor down.[56]

---

[50] Rec. Doc. 93 at 1.

[51] *Id.* at 1–2.

[52] *Id.* at 2.

[53] *Id.*

[54] *Id.* at 4.

[55] *Id.*

[56] *Id.* at 4–6.

8

Plaintiff argues that the *ejusdem generis* canon of construction supports its interpretation of Rule 3(g).[57] Plaintiff asserts that the *ejusdem generis* canon provides that "where a general term in a statute follows enumeration of specific words or phrases, the general term will be limited to the same general meaning as that of the enumerated specific words."[58] Under this canon, Plaintiff contends that, to fall under the ambit of Rule 3(g), the work a vessel is engaged in must "be limited to the same general type of example provided by the list." Plaintiff avers that a vessel heaving anchors "is not engaged in any work . . . [and] is simply preparing to depart."[59] Additionally, Plaintiff asserts that heaving anchors "bears no relation to the specific examples provided in the list."[60]

Finally, Plaintiff argues that Pilot Johnson's adoption of Defendants' opposition "should be disregarded because Pilot Johnson . . . [did] not classify [the] *Strandja* as a Rule 18 vessel restricted in her ability to maneuver."[61]

### III. Legal Standard on Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[62] When assessing whether a dispute as to any material fact exists, the court

---

[57] *Id.* at 6–7.

[58] *Id.* at 7 (quoting *Sparks v. Celebrezze*, 228 F. Supp. 508, 512 (E.D. Tex. 1964)).

[59] *Id.* at 8.

[60] *Id.* Plaintiff also responds to Defendants' objections to the VDR data. *Id.* As noted above, the Court need not consider this evidence in deciding this motion. *See supra* note 27.

[61] Rec. Doc. 93 at 10.

[62] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

9

considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[63] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[64] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[65] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[66]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[67] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports their claims.[68] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[69] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by

---

[63] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[64] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[65] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[66] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[67] *Celotex*, 477 U.S. at 323.

[68] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[69] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[70] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[71]

## IV. Analysis

This dispute concerns the application of three regulations from the INR.[72] Rule 3(g) defines terms used throughout the regulations. In pertinent part, Rule 3(g) defines a "vessel restricted in her ability to maneuver" as "a vessel which, from the nature of her work, is restricted in her ability to maneuver as required by these Rules and is therefore unable to keep out of the way of another vessel."[73] Rule 3(g) provides:

> The term vessels restricted in their ability to maneuver include, but are not limited to:
>
> (i) [a] vessel engaged in laying, servicing, or picking up a navigation mark, submarine cable, or pipeline;
> (ii) a vessel engaged in dredging, surveying, or underwater operations;
> (iii) a vessel engaged in replenishment or transferring persons, provisions, or cargo while underway;
> (iv) a vessel engaged in the launching or recovery of aircraft;
> (v) a vessel engaged in mine clearance operations;
> (vi) a vessel engaged in a towing operation such as severely restricts the towing vessel and her tow in their ability to deviate from their course.[74]

---

[70] *Little*, 37 F.3d at 1075.

[71] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[72] 33 C.F.R. § 83.01, *et seq.*

[73] *Id.* § 83.03(g).

[74] *Id.*

11

Rule 27(b) prescribes the signals that a vessel restricted in her ability to maneuver must display.[75] Relevant here, "[a] vessel restricted in her ability to maneuver . . . shall exhibit . . . [t]hree shapes in a vertical line where they can best be seen. The highest and lowest of these shapes shall be balls and the middle one a diamond."[76] Finally, Rule 18 establishes the responsibilities between vessels.[77] Under this Rule, "[a] power-driven vessel underway shall keep out of the way of . . . [a] vessel restricted in her ability to maneuver."[78]

Plaintiff seeks partial summary judgment that Defendants' vessel, the *Strandja*, was not a vessel restricted in her ability to maneuver.[79] If the *Strandja* were so restricted, then under Rule 18, Plaintiff's vessel, the *Bailey*, would have been obligated to keep out of the way of the *Strandja*. In opposition, Defendants assert that whether the *Strandja* was restricted in her ability to maneuver is a question of fact "for the jury to decide."[80]

Neither party disputes the essential facts of this case. Plaintiff submits that, at the time of the collision, the *Strandja* was in the process of heaving anchors.[81] Plaintiff asserts that after the heave starboard anchor command, the *Strandja* moved into the navigable channel as the *Bailey* passed, causing the collision.[82] Defendants point to no facts to dispute that the *Strandja* was un-

---

[75] *Id.* § 83.27(b).

[76] *Id.*

[77] *Id.* § 83.18.

[78] *Id.*

[79] Rec. Doc. 78 at 1.

[80] Rec. Doc. 81 at 1.

[81] Rec. Doc. 78-2 at 2.

[82] *Id.* at 3.

anchoring and that she swung into the Mississippi River.[83]

Instead, the parties dispute whether the *Strandja* was "restricted in her ability to maneuver" under Rule 3(g). Plaintiff argues that she was not, because the *Strandja* was not engaged in any of the "work" contemplated by Rule 3(g). Conversely, Defendants contend that Rule 3(g) should be read to include un-anchoring as a type of work that restricts a vessel's maneuverability because, as a practical matter, a vessel heaving anchors cannot control turning toward the last remaining anchor in the water. Thus, the issue the Court must decide is whether the *Strandja* is a vessel restricted in her maneuverability under Rule 3(g).

No court within the Fifth Circuit has had an opportunity to interpret Rule 3(g)'s "nature of her work" requirement. However, the United States Court of Appeals for the Eleventh Circuit's decision in *Garrett v. Higgenbotham* is instructive.[84] In that case, the Eleventh Circuit held that a shrimp trawler was not required to display the signals prescribed by Rule 27(b) because it was not a "vessel restricted in her ability to maneuver."[85] There, a shrimp trawler proceeding inbound in a marked channel collided with an outbound sailboat.[86] At the time of the collision, the trawler had her outrigger down, although she was not fishing at the time.[87]

The appellate court reasoned the trawler was not a "vessel restricted in her ability to

---

[83] *See* Rec. Doc. 81-1.

[84] 800 F.2d 1537. In *Garrett*, the Eleventh Circuit interpreted the prior version of Rule 3(g), codified at 33 U.S.C. § 2003(g) (repealed 2004). *Id.* at 1539. The INR were recodified in the Code of Federal Regulations in 2014. *See* Coast Guard and Maritime Transportation Act of 2004, Pub. L. 108-293, tit. III, § 303(a), 118 Stat. 1042; Changes to the Inland Navigation Rules, 79 Fed. Reg. 37,898-01 (July 2, 2014) (codified at 33 C.F.R. § 83.01, *et seq.*). The requirements of Rule 3(g) do not materially differ between versions. *Compare* 33 U.S.C. § 2003(g) (repealed 2004) *with* 33 C.F.R. § 83.03(g).

[85] *Garrett*, 800 F.2d at 1539.

[86] *Id.* at 1538.

[87] *Id.*

13

maneuver" because her maneuverability was not restricted "from the nature of [her] work."[88] The Eleventh Circuit explained that "the term 'vessel restricted in her ability to maneuver' is a term of art that has been defined by Congress in a specific way. In the context of the [INR], the phrase means a vessel '*which from the nature of its work* is restricted in her ability to maneuver as required by [the INR].'"[89] The court noted that "all six examples provided in [Rule 3(g)] involve vessels whose work activities restrict their maneuverability."[90]

In declining to extend the statute to the trawler, the Eleventh Circuit noted that it was "reluctan[t] to indulge in judicial innovation as part of statutory interpretation."[91] As the court explained:

> The [INR are] an elaborate and sophisticated network of interlocking, technical, statutory regulations governing waterborne traffic generally. Moreover, [the INR are] based, in large part, on a similar body of international regulations. Evidently, much time, energy and expert thought was invested in the [INR's] development by Congress. Especially in light of the history, *courts ought to be extremely slow to tamper with this sensitive, regulatory system*. This is true even if it seems reasonable, in the context of an isolated case, to extend a definition, such as, that of "vessel restricted in her ability to maneuver," . . . when the statute has not done so.[92]

As the *Garret* court cautioned, courts "are ill prepared to know what the consequences of such innovation might be for the regulatory system and for waterborne traffic in general."[93]

Here, Defendants attempt to distinguish *Garrett* by asserting that the case "barely discussed

---

[88] *Id.* at 1539 (emphasis omitted).

[89] *Garrett*, 800 F.2d at 1539 (emphasis in original).

[90] *Id.* at n.4.

[91] *Id.* at 1539.

[92] *Id.* (emphasis added).

[93] *Id.*

14

Rule 18 and provides no guidance on the present issue."[94] The Court disagrees. In *Garrett*, the Eleventh Circuit applied the language of Rule 3(g) to determine whether the trawler was required to display the signals prescribed by Rule 27 for a vessel restricted in her maneuverability.[95] In holding that the trawler was not "restricted in her maneuverability" under Rule 3(g), the Eleventh Circuit explained that a vessel is restricted in her maneuverability only if that vessel's maneuverability is impaired "*from the nature of its work*."[96]

Defendants urge the Court to give this "fact question" to a jury. However, "[q]uestions of statutory interpretation are questions of law" for the Court to decide.[97] Defendants argue that Rule 3(g) applies to the *Strandja* because "a vessel in the process of heaving her anchors . . . is, as a practical matter, restricted in [her] maneuverability."[98] Put another way, Defendants ask the Court to interpret un-anchoring activities as the kind of activity contemplated by Rule 3(g)'s "nature of her work" requirement.

The Court finds that heaving anchors is not "work" as defined by Rule 3(g). When interpreting statutory language, courts are guided by canons of construction.[99] The *ejusdem generis* canon instructs that "when a general term follows a specific one, the general term should

---

[94] Rec. Doc. 81 at 8.

[95] *Garrett*, 800 F.2d at 1539.

[96] *Id.*

[97] *Kemp v. G.D. Searle & Co.*, 103 F.3d 405, 407 (5th Cir. 1997) (citing *Est. of Bonner v. United States*, 84 F.3d 196, 197 (5th Cir. 1996)).

[98] Rec. Doc. 81 at 7.

[99] *See, e.g.*, *Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9, 23 (2006); *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001).

be understood as a reference to subjects akin to the one with specific enumeration."[100] Here, Rule 3(g) specifies six examples of work that restrict a vessel's ability to maneuver, but provides that the list is not exhaustive.[101] The types of work specified in the statute involve highly specific and non-standard activities. For example, "laying, servicing, or picking up a navigation mark, submarine cable, or pipeline;" "dredging, surveying, or underwater operations;" "replenish[ing] or transferring persons, provisions, or cargo while underway;" "launching or recovery of aircraft;" "mine clearance operations;" or "towing operation[s] . . . restrict[ing] the towing vessel and her tow in their ability to deviate from their course."[102] Unlike the specific examples in the statute, heaving anchors is a typical, ordinary, regular activity for a vessel with anchors.

As the Eleventh Circuit cautioned, "much time, energy and expert thought was invested in the [INR's] development by Congress."[103] If Congress intended to include the highly ordinary activity of heaving anchors in the "nature of her work" requirement, Congress surely would have done so. "Nevertheless, from the wording of the [INR], Congress apparently intended otherwise . . . ."[104] To expand Rule 3(g) to capture un-anchoring procedures would vastly expand the scope of the INR. This Court, like the Eleventh Circuit, is "ill prepared to know what the consequences of such innovation might be for the regulatory system and for waterborne traffic in general."[105] Accordingly, the Court finds that the *Strandja* was not a "vessel restricted in her ability to

---

[100] *Norfolk & W. R. Co. v. Train Dispatchers*, 499 U.S. 117, 129 (1991).

[101] 33 C.F.R. § 83.03(g).

[102] *Id.*

[103] *Garrett*, 800 F.2d at 1539.

[104] *Id.*

[105] *Id.*

16

maneuver" under Rules 3(g) and 18.[106]

### IV. Conclusion

Since there is no genuine issue of material fact, and the only issue in dispute is whether Defendants' vessel was restricted in her maneuverability under the INR, summary judgment is appropriate. As discussed above, the Court finds that un-anchoring procedures are not included in Rule 3(g)'s "nature of her work" requirement. Therefore, the *Strandja* was not restricted in her ability to maneuver under Rule 18. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Marquette Transportation Company Gulf-Inland, LLC's Motion for Partial Summary Judgment[107] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this 26th day of August, 2021.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[106] 33 C.F.R. §§ 83.03(g), 83.18. In determining that the *Strandja* is not a vessel restricted in her maneuverability under Rule 3(g), the Court need not address whether Rule 27(b) applies.

[107] Rec. Doc. 78.