## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARQUETTE TRANSPORTATION CO. GULF-INLAND, LLC** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 19-10927** |
| **NAVIGATION MARITIME BULGAREA et al.** | **SECTION: "G"(2)** |

### ORDER AND REASONS

Before the Court is Third-Party Defendant Robert Johnson's ("Johnson") "Motion in Limine to Exclude Cumulative Expert Testimony."[1] In the motion, Johnson requests that the Court limit Plaintiff Marquette Transportation Co. Gulf-Inland, LLC ("Marquette") to a single expert who will opine on causation, rather than the three experts Marquette has proposed.[2] Marquette opposes the motion.[3] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

### I. Background

According to the Complaint, on January 3, 2019, Marquette's vessel, the *Kieffer Bailey* (the "*Bailey*"), was proceeding down the middle of the Mississippi River near Chalmette, Louisiana when Defendants Navigation Maritime Bulgarea and Balkan Navigation, Ltd.'s (collectively, "Defendants") vessel, the *Strandja*, allegedly steered directly into the *Bailey*'s navigational path.[4] Marquette alleges that Defendants' vessel struck and damaged Marquette's

---

[1] Rec. Doc. 97.

[2] *Id.*

[3] Rec. Doc. 101.

[4] Rec. Doc. 1 at 1–2.

1

vessel.[5] Marquette's crewmembers allegedly sustained physical and emotional injuries.[6]

On June 6, 2019, Marquette filed a Complaint in this Court against Defendants.[7] On June 21, 2019, Defendant Balkan Navigation Ltd. answered the Complaint and filed a counterclaim against both Marquette and the *Bailey* to recover damages incurred by the *Strandja*.[8] On September 11, 2019, Marquette answered the counterclaim and filed a third-party complaint against Crescent, the alleged owner of the assist tug, *M/V Providence* (the "*Providence*"), that pulled Defendants' vessel on the date of the collision.[9] Marquette also filed a third-party complaint against Johnson, the compulsory pilot aboard the *Strandja*.[10]

## II. Parties' Arguments

### A.   *Johnson's Arguments in Support of the Motion to Exclude*

Johnson moves the Court to limit Marquette to eliciting causation testimony from a single expert, rather than the three experts currently proposed by Marquette.[11] According to Johnson, Marquette has designated three experts that will testify to Johnson's alleged errors: Captain Wayne E. Wilson ("Wilson"), Captain Michael Berry ("Berry") and Captain Garreth Fernandes ("Fernandes") (collectively, the "Experts").[12] Johnson argues that the Experts' opinions are cumulative and redundant because they "offer the same vantage point, rely on the same evidence

---

[5] *Id.* at 3.

[6] *Id.*

[7] *Id.* at 1.

[8] Rec. Doc. 6.

[9] Rec. Doc. 17 at 4–5.

[10] *Id.* at 6.

[11] Rec. Doc. 97.

[12] Rec. Doc. 97-1 at 1.

and methodology, and arrive at the same . . . conclusion."[13] Specifically, Johnson notes that all three experts concluded that the *Strandja*'s crew caused the collision.[14] Johnson asserts that because the Experts are all "similarly qualified and trained" and all reviewed "the same evidence," their testimony is duplicative, repetitious, and cumulative.[15]

Additionally, Johnson argues that allowing Marquette to put on three substantially identical experts would be severely prejudicial for two reasons.[16] First, Johnson asserts that allowing three experts to offer the same opinion unnecessarily multiplies the cost of preparing for trial.[17] Second, Johnson contends that because this is a jury trial, multiple experts offering the same conclusion "may confuse the jury and may cause the jury to give additional weight to the testimony."[18] Therefore, Johnson "requests that this Court limit the duplicative expert testimony . . . by allowing Marquette to designate one of its three proffered" experts as a testifying witness for trial.[19]

**B.   *Marquette's Arguments in Opposition to Johnson's Motion***

In opposition, Marquette asserts that Johnson's motion should be denied for three reasons.[20] First, Marquette argues that the testimony is not cumulative because each expert offers a "distinct category[y] of maritime navigational expertise."[21] Marquette avers that Berry is an

---

[13] *Id.* at 1, 6–8.

[14] *Id.* at 7–8.

[15] *Id.* at 7.

[16] *Id.* at 8.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] Rec. Doc. 101 at 1.

[21] *Id.* at 2,

expert in inland towboats, Fernandes is an ocean-going vessel navigation expert, and Wilson is a Mississippi river pilot expert.[22] Additionally, Marquette asserts that each expert's qualifications are "vastly different" and that each expert uses different methodologies.[23] Thus, Marquette contends that, although the Experts concur in their opinion that the collision was caused by the *Strandja*, "the supporting opinions of all three experts are substantially different and reflect the distinct focus of each expert's testimony."[24] For example, Marquette asserts that Wilson discusses the reasonableness of Johnson's actions "under the rules, regulations, and customs" of Mississippi River pilots, but Fernandes and Berry do not opine on this issue.[25]

Second, Marquette argues that the proposed testimony's probative value substantially outweighs its potential prejudicial effect.[26] Marquette asserts that the Experts' testimony will aid the jury because liability in maritime collision cases "often depends on several factors" like duties of the individuals involved, the type of vessel, that vessel's maneuverability, environmental conditions, and more.[27] Additionally, Marquette avers that Johnson has not identified any prejudice he will suffer.[28] Marquette notes that "the jury will be specifically instructed to weigh evidence based on the quality of the witness['] testimony, not the sheer number of witnesses

---

[22] *Id.* at 6–7.

[23] *Id.* at 10–11.

[24] *Id.* at 11–12.

[25] *Id.* at 12. Marquette also asserts that Fernandes opines on the reasonableness of the *Strandja*'s master, while Berry and Wilson do not, *Id.* at 11–12, and that Berry discusses the reasonableness of the captain of the *Bailey*'s actions, while Wilson and Fernandes do not. *Id.* at 12.

[26] *Id.* at 2, 14–16.

[27] *Id.* at 14.

[28] *Id.* at 15.

presented on a particular point."[29] Marquette further contends that "Rule 403 is 'not designed to permit the court to even out the weight of the evidence'" or to "reduce costs incurred by counsel during the prosecution of a lawsuit."[30] Third, Marquette argues that Johnson's motion is premature because no expert has testified yet.[31] Thus, Marquette contends that Johnson's motion is premature and should be denied or deferred to trial.[32]

## C.    *Johnson's Further Arguments in Support of the Motion to Exclude*

In reply, Johnson argues that Marquette misrepresents that the Experts offer distinct expertise and opinions.[33] Instead, Johnson asserts that the Experts' reports are cumulative because "each expert repeatedly strays from their alleged area of expertise into one [an]other's, creating so much overlap that their opinions are practically indistinguishable."[34]

Johnson also argues that Marquette's representations about the limited scope of each expert's report are contradicted by Marquette's own opposition.[35] First, Johnson notes that Marquette claimed that Berry will testify about the actions of the *Bailey* and will not discuss the

---

[29] *Id.*

[30] *Id.* at 15 (first quoting *Moore v. Ashland Chem., Inc.*, 126 F.3d 679, 692 (5th Cir. 1997), *vacated*, 151 F.3d 269 (internal quotation omitted); and then quoting *Piskura v. Taser Int'l*, No. 10-248, 2012 WL 1267990, at *3 (S.D. Ohio Apr. 13, 2012)).

[31] *Id.* at 2, 16–17.

[32] *Id.* at 16.

[33] Rec. Doc. 129 at 2.

[34] *Id.*

[35] *Id.* at 2–3.

reasonableness of Johnson's conduct.[36] However, Johnson asserts that Berry's report "offers repeated assessments of . . . Johnson's conduct."[37]

Next, Johnson notes that Marquette stated that Wilson's testimony would be limited to the actions of Johnson.[38] However, Johnson asserts that Wilson's and Berry's opinions are duplicative because they offer the "same opinions" on Johnson's actions.[39] Additionally, Johnson contends that Wilson's report also goes beyond its purported scope.[40] For example, Johnson notes that Wilson opines on the reasonableness of the *Bailey*'s actions,[41] and that Wilson's opinion on the *Strandja*'s maneuvers is virtually identical to Berry's.[42] Third, Johnson states that Marquette averred Fernandes would testify about the actions of the *Strandja*'s crew.[43] Yet Johnson points to "numerous opinions" offered by Fernandes as to the actions of Johnson and the *Bailey*.[44]

---

[36] *Id.* at 3. *See also* Rec. Doc. 101 at 12 ("Captain Wilson discusses the reasonableness of Pilot Johnson's conduct at the time of the collision, specifically under the rules, regulations, and customs applicable to Mississippi River pilots. Captain Fernandes and Captain Berry do not.").

[37] Rec. Doc. 129 at 3. *See also* Rec. Doc. 97-3 at 8–10.

[38] Rec. Doc. 129 at 5. *See also* Rec. Doc. 101 at 12 ("Captain Wilson discusses the reasonableness of Pilot Johnson's conduct at the time of the collision, specifically under the rules, regulations, and customs applicable to Mississippi River pilots. Captain Fernandes and Captain Berry do not.").

[39] Rec. Doc. 129 at 5.

[40] *Id.*

[41] *Id. See also* Rec. Doc. 97-2 at 5 ("In conclusion I think the [*Bailey*] was piloted in a safe and prudent manner and did not contribute to the collision.").

[42] Rec. Doc. 129 at 6. *Compare* Rec. Doc. 97-2 at 5 ("[*Strandja*'s] intentional and unannounced movement . . . violated Mississippi river piloting practices, and the following Rules: [2, 5, 6, 7, 8, 9, and the Vessel Bridge to Bridge Radiotelephone Act].") *with* Rec. Doc. 97-3 at 8–9 ("The [*Strandja*'s] unauthorized and unannounced departure from the designated General Anchorage . . . [was] in violation of Rule [2, 5, 6, 7, 8, 9, 34, and the Vessel Bridge to Bridge Radiotelephone Regulations].").

[43] Rec. Doc. 129 at 6.

[44] *Id. See also* Rec. Doc. 97-3 at 8 ("[Johnson] did not assess the traffic in the area . . . ."), 10 ("Johnson, with all his extensive experience[,] makes some concerning statements in his Deposition . . . ."), 11 ("[The *Bailey*] took all necessary measures to stay clear of the [*Strandja*] and was in compliance with the Rules of the Road.").

Johnson reasserts his argument that the Experts did not use different methodologies.[45] Specifically, Johnson contends that the Experts relied on the same materials, opine on the "potentially negligent behaviors," namely, "phone usage, rushing to get underway, and allegedly failing to make or respond to radio calls."[46] In relying on the same evidence, Johnson argues that the Experts offer "substantially the same conclusions."[47] Therefore, Johnson asserts that allowing all three experts to offer the same conclusions "will have a seriously prejudicial influence on the jurors' minds."[48]

Johnson advances three other miscellaneous arguments. Johnson asserts that his motion is not premature because "[t]he purpose of a motion in limine is for the Court to rule on certain evidentiary issues before trial."[49] Johnson also asks the Court to "recognize that Marquette is judicially estopped from taking a contrary position in later proceedings by offering testimony of any of its experts inconsistent with the narrow scope its Opposition represents each expert will adhere to."[50] Finally, in his supplemental reply, Johnson asserts that Marquette contradicted itself in a separate brief filed in opposition to Johnson's motion for summary judgment.[51] In that brief,

---

[45] Rec. Doc. 129 at 7.

[46] *Id.*

[47] *Id.*

[48] *Id.* at 8.

[49] *Id.* at 9 (quoting *Robert v. Maurice*, No. 18-11632, 2020 WL 4035523, at *10 (E.D. La. July 17, 2020) (Brown, C.J.)) (emphasis omitted).

[50] *Id.* at 10.

[51] Rec. Doc. 145 at 2. *See also* Rec. Docs. 123, 131.

Johnson avers that Marquette stated that Berry and Fernandes "will . . . testify regarding the propriety of Johnson's conduct."[52]

### III. Law and Analysis

Johnson moves the Court to exclude two out of three of Marquette's experts, arguing that their testimony is cumulative.[53] Marquette opposes, arguing that its three experts will each testify to "distinct categories of maritime navigational expertise," and thus their testimony will not be cumulative.[54]

Pursuant to Federal Rule of Evidence 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Fifth Circuit instructs that "[t]he exclusion of evidence under Rule 403 should occur only sparingly[.]"[55] "It is well established that testimony which is merely repetitious and cumulative of testimony already introduced may be excluded by the trial court in its discretion."[56] In *Leefe v. Air Logistics, Inc.*, the Fifth Circuit deferred to the district judge's decision to, at trial, exclude testimony by a second expert doctor as cumulative.[57] There, the Fifth Circuit explained that there is no "precise limit on the number of experts who can testify in a given area," although attorneys are "discourage[d] . . . from parading additional experts before

---

[52] Rec. Doc. 145 at 2 (quoting Rec. Doc. 131 at 10).

[53] Rec. Doc. 97.

[54] Rec. Doc. 101.

[55] *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993), *cert. denied*, 511 U.S. 1149 (1994).

[56] *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985), *cert. denied*, 471 U.S. 1126 (1985) (citing *Meadows & Walker Drilling Co. v. Phillips Petroleum Co.*, 417 F.2d 378, 382 (5th Cir. 1969)); Fed. R. Evid. 403.

[57] 876 F.2d 409, 411 (5th Cir. 1989).

the court in the hope that the added testimony will improve on some element of the testimony by the principal expert."[58] However, as stated above, the Fifth Circuit instructs that "[t]he exclusion of evidence under Rule 403 should occur only sparingly[.]"[59] Additionally, a decision to reject "expert testimony is the exception rather than the rule."[60]

Here, the Experts' reports do seem to overlap. Each expert offers an opinion on Johnson's conduct.[61] Each expert offers an opinion as to the propriety of the *Bailey*'s conduct.[62] Wilson and Berry's reports come to nearly identical conclusions about the rules violated by the *Strandja*.[63] Additionally, the experts seem to rely on substantially the same information.[64] Conversely, Marquette avers that each expert "is uniquely qualified and will testify regarding discrete issues of maritime navigation with respect to the tugboat, the ocean-going ship, and the pilot in terms of how each of these parties should navigate in relation to the other."[65]

At this juncture, the Court cannot determine whether the Experts' testimony is merely cumulative or whether each expert is opining on "discrete issues of maritime navigation."[66] Given

---

[58] *Leefe*, 876 F.2d at 411.

[59] *Pace*, 10 F.3d at 1115.

[60] Fed. R. Evid. 702 advisory committee's note to 2000 Amendments.

[61] *See, e.g.*, Rec. Doc. 97-2 at 3 (discussing Johnson's cell phone use); 97-3 at 9 (same); 97-4 at 7 (same).

[62] *See, e.g.*, Rec. Doc. 97-2 at 3; 97-3 at 11; 97-4 at 11.

[63] *Compare* Rec. Doc. 97-2 at 5 ("*[Strandja*'s] intentional and unannounced movement . . . violated Mississippi river piloting practices, and the following Rules: [2, 5, 6, 7, 8, 9, and the Vessel Bridge to Bridge Radiotelephone Act].") *with* Rec. Doc. 97-3 at 8–9 ("The [*Strandja*'s] unauthorized and unannounced departure from the designated General Anchorage . . . [was] in violation of Rule [2, 5, 6, 7, 8, 9, 34, and the Vessel Bridge to Bridge Radiotelephone Regulations].").

[64] *See, e.g.*, Rec. Doc. 97-2 at 2; 97-3 at 1–4; 97-4 at 12.

[65] Rec. Doc. 101 at 1.

[66] *See id.*

the guidance from the Fifth Circuit to exclude evidence under Rule 403 only sparingly, the Court will not arbitrarily limit Marquette to just one expert. However, if Marquette seeks to introduce testimony that is "merely repetitious and cumulative of testimony already introduced[, it] may be excluded" at trial.[67]

Therefore, Johnson's concerns about the allegedly cumulative nature of Marquette's expert testimony can be addressed at trial. Additionally, other safeguards will discourage needlessly presenting cumulative evidence. For example, at the pretrial conference, the Court will apportion each side a certain number of minutes to present their cases at trial. The parties are advised to use this time wisely and not present cumulative testimony. Accordingly, the Court denies Johnson's motion. However, to the extent Marquette attempts to elicit duplicative or cumulative testimony at trial, Johnson may re-raise his objection, if necessary.

**IT IS HEREBY ORDERED** that Third-Party Defendant Robert Johnson's ("Johnson") "Motion in Limine to Exclude Cumulative Expert Testimony"[68] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this __17th__ day of January, 2022.


**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[67] *Harvey*, 754 F.2d at 572.

[68] Rec. Doc. 97.

10