# Transcript of the Testimony of
# **Kiril L. Karapanov**

## **Date taken: June 10, 2020**

## **Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al**

All electronic deposition & exhibit files
are available at **<<<www.psrdocs.com>>>**.
Please call or e-mail reporters@psrdocs.com if you need a
**Username** and **Password**.

# **Professional Shorthand Reporters, Inc.**
**Phone:504-529-5255**
**Fax:504-529-5257**
**Email:reporters@psrdocs.com**
**Internet: http://www.psrdocs.com**



EXHIBIT

1

Kiril L. Karapanov
Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

Page 67

1        never -- never happened.  So you're asking

2        him to speculate.

3             MR. ADAM DAVIS:

4                  Okay.

5                  And for the second part with

6        respect to his expectations for what a ship

7        would do before doing that, what is the

8        objection to that question?

9             MR. SLOSS:

10                  It's purely speculative since it's

11        never happened.

12             MR. ADAM DAVIS:

13                  Okay.

14                  And, Alan, what is your objection?

15             MR. ALAN DAVIS:

16                  Those objections, in addition to

17        the fact that he is not a Mississippi River

18        pilot.  You haven't laid any foundation for

19        him having any basis to know what would be

20        expected or customary under those

21        circumstances.

22             MR. ADAM DAVIS:

23                  Okay.

24        EXAMINATION BY MR. ADAM DAVIS:

25             Q.   Why must a ship contact vessel traffic

Kiril L. Karapanov
Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

Page 68

```
 1   before moving out of an anchorage into the path of
 2   a downbound vessel?
 3              MR. ALAN DAVIS:
 4                   Objection.  Same objection.
 5              MR. SLOSS:
 6                   Objection.
 7                   (Interpreter translates the
 8          question for the witness.)
 9              MR. ADAM DAVIS:
10                   One second.  That's good.
11   EXAMINATION BY MR. ADAM DAVIS:
12       Q.    What is the basis for your testimony
13   concerning your expectation that a ship would
14   contact vessel traffic before leaving an anchorage
15   and topping out into the path of a downbound ship?
16              MR. ALAN DAVIS:
17                   Objection.
18              MR. SLOSS:
19                   Same objection.
20              THE WITNESS:
21                   That must be on the basis of my
22          experience.  CFR.
23   EXAMINATION BY MR. ADAM DAVIS:
24       Q.    Code of Federal Regulations; correct?
25       A.    (No response.)
```

Kiril L. Karapanov
Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

Page 69

1      Q.     Well, how about this?

2             Captain, when you said "CFR," you meant

3      Code of Federal Regulations; correct?

4      A.     Yes.

5      Q.     Captain, what was the visibility on the

6      day of the incident?

7      A.     The visibility was good.

8      Q.     Isn't it true you had seven miles of

9      visibility when this incident occurred?

10     A.     I don't know the exact miles, but it was

11     a good visibility.  Maybe about seven miles.

12     Q.     Captain, do you -- Well, isn't it true

13     that you wrote to your flag state --

14            THE COURT REPORTER:

15                Adam, I can't hear you.

16            MR. ADAM DAVIS:

17                Sorry, guys.

18     EXAMINATION BY MR. ADAM DAVIS:

19     Q.     Did you -- you prepare a report to your

20     flag state, Malta; is that correct?

21     A.     We need to check to be correct.

22     Q.     Well, let's take a break.  And if you

23     could pull up the flag state report that you

24     prepared to -- that you sent to -- It's a marine

25     accident incident form, STRANDJA 1433 through

Kiril L. Karapanov
Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

Page 134

1          Now, Captain, we're -- Now we're looking

2    at 17:24:55.

3          Isn't it true now -- Which -- Scratch

4    that.

5          Which direction is the course-over-

6    ground vector pointing now?

7     A.    We keep swinging.

8     Q.    In which direction?

9     A.    The same direction, towards the right,

10   the starboard.

11    Q.    Towards the middle of the river?

12    A.    We are still far away.  We are still in

13   the borders of the anchorage.  We are swinging

14   right.

15    Q.    Towards the middle of the river;

16   correct?

17    A.    Yes.  That's the direction.

18    Q.    Well, the time now, Captain, is

19   17:25:49.

20          Where is the STRANDJA's bow now?

21          MR. SLOSS:

22              I'm sorry.  I couldn't hear the

23       question.

24   EXAMINATION BY MR. ADAM DAVIS:

25    Q.    Where is the STRANDJA's bow now at

Page 135

1    17:25:49?

2         A.    The front part is outside the anchorage.

3         Q.    Which direction is the STRANDJA moving

4    at this time, 17:25:49?

5         A.    It keeps swinging.

6         Q.    In which direction?

7         A.    Right direction, towards the -- Towards

8    the starboard.  Yeah.

9         Q.    Towards the middle of the river?

10        A.    Yes.

11        Q.    The time now, Captain, is 17:26:44.

12              How would you describe the STRANDJA's

13   position now, at 17:26:44?

14        A.    About two-thirds of the ship is outside

15   the anchorage, and the back part of the ship is

16   still in the anchorage.

17              (Video stops.)

18   EXAMINATION BY MR. ADAM DAVIS:

19        Q.    Is it proper for your ship to be in this

20   position at 17:26:44 when heaving anchors?

21              MR. ALAN DAVIS:

22                   Object to the form.

23              MR. SLOSS:

24                   Same objection.

25              THE WITNESS:

Transcript of the Testimony of
# Kiril L. Karapanov

### Date taken: June 15, 2020
### Volume II

### Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

All electronic deposition & exhibit files
are available at **<<<www.psrdocs.com>>>**.
Please call or e-mail reporters@psrdocs.com if you need a
**Username** and **Password**.

# Professional Shorthand Reporters, Inc.
**Phone:504-529-5255**
**Fax:504-529-5257**
**Email:reporters@psrdocs.com**
**Internet: http://www.psrdocs.com**

Kiril L. Karapanov
Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

Page 174

1              Okay.  Thank you.

2          THE INTERPRETER:

3              -- and not the other meaning.

4          MR. SLOSS:

5              Understood.

6          THE WITNESS:

7              My ans --

8              My answer to the last question is

9      no.

10     EXAMINATION BY MR. ADAM DAVIS:

11         Q.   Thank you.

12             Was your vessel moving at the time of

13     collision?

14         A.   The -- The ship was like swinging.

15             You mean swinging?  Yeah.  Turning.  The

16     ship was turning.

17         Q.   So your vessel was not stationary at the

18     time of collision; true?

19         A.   It was turning.  There was turning

20     movement.

21         Q.   So it was not stationary; correct?

22         A.   No.  It wasn't stationary.

23             The ship was still in anchorage.  We had

24     one anchor, the right anchor.

25         Q.   I'm sorry, Captain.  To -- I -- I just

Page 178

```
 1              Hey, o -- One second.  I -- I'm
 2         sorry, guys.
 3              Mr. Emil --
 4         MR. YORDANOV:
 5              Yes.
 6         MR. ADAM DAVIS:
 7              -- I -- I understand, but we -- we
 8         got -- This is -- We're getting into some
 9         questions that we feel are important here,
10         and you -- you can't be whispering to the
11         witness with your hand over your mouth.
12         It's not proper.  I understand you're just
13         trying to help facilitate things, but you
14         can't do that, please.  Okay?
15              And he -- The captain is -- He can
16         answer the questions on his own.  Thank you.
17    EXAMINATION BY MR. ADAM DAVIS:
18       Q.   All right.
19              I'm going to play it.  Please tell me
20    when the collision occurs.
21              THE INTERPRETER:
22              He can't hear me.  I'm asking him
23         whether he hears me.
24              (VDR plays.)
25    EXAMINATION BY MR. ADAM DAVIS:
```

Kiril L. Karapanov
Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

Page 179

1      Q.    Has it occurred yet?

2      A.    Maybe just a little bit more.

3            Yes.  I think that that is the moment.

4      Q.    What -- The time right now is what,

5  Captain?

6      A.    17:26:53.

7      Q.    And what is your speed over ground,

8  Captain?

9      A.    1.8.

10     Q.    In which direction is your course over

11  ground pointed?

12     A.    We -- We are moving right.

13     Q.    Towards the middle of that river?

14     A.    Yes.  Yes.  Right tow -- Yes, right of

15  the -- towards the flow, on the flow.

16          MR. SLOSS:

17              Wait.  I'm sorry.  I didn't

18       understand that.

19              Could you repeat that, please?

20          THE INTERPRETER:

21              Let me just clarify it with him.

22          THE WITNESS:

23              I mean that because of the flow of

24       the river, the ship is turning right.

25  EXAMINATION BY MR. ADAM DAVIS:

Kiril L. Karapanov
Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

Page 180

1      Q.    In the direction of the middle of the
2  river; is that correct?
3      A.    I would say it's like down, downbound,
4  the flow of the river.  It's -- It's turning
5  towards right-bound.
6      Q.    So at the time of collision your speed
7  over ground was 1.8 knots; correct?
8      A.    That's the turning movement.
9      Q.    That's your speed-over-ground movement;
10  correct?
11         MR. ALAN DAVIS:
12            Objection.
13         THE WITNESS:
14            Yes.
15  EXAMINATION BY MR. ADAM DAVIS:
16      Q.    And that's in knots; correct?
17      A.    Yes.
18      Q.    And you are turning in a clockwise
19  movement; correct?
20      A.    Yes.
21      Q.    So to go back to my initial question,
22  Captain, at the time of collision, were you moving
23  or were you stationary?
24         MR. ALAN DAVIS:
25            Object to the form.

Kiril L. Karapanov
Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

Page 181

1          MR. SLOSS:

2               Same objection.

3          THE WITNESS:

4               The ship was turning.  Whether it

5     has changed its position, I can't say.  It

6     was turning.

7  EXAMINATION BY MR. ADAM DAVIS:

8      Q.    Why can't you say whether it has changed

9  position, Captain?

10     A.    Because when the ship is turning, it may

11  still stay at the same position.  Just the ship

12  itself is turning.

13     Q.    Captain, can you please look at the

14  screen?

15          THE COURT REPORTER:

16               I didn't hear what you sa -- you

17     just said, Adam.

18  EXAMINATION BY MR. ADAM DAVIS:

19     Q.    I said could you please look at the Zoom

20  exhibit screen.

21     A.    Yes.  Yes.  I am looking at it right

22  now.

23     Q.    Which is Exhibit 4, I believe.

24     A.    Yes, it's 4.

25     Q.    Comparing the two ECDIS screen shots --

Kiril L. Karapanov
Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

Page  182

1          THE COURT REPORTER:

2               Wait, wait, wait, wait, wait.

3               Adam, you're moving away from the

4     microphone again.

5          MR. ADAM DAVIS:

6               I'm sorry.  Thank you, Buddy.

7     EXAMINATION BY MR. ADAM DAVIS:

8     Q.    Comparing the two ECDIS screen shots,

9     is your bow and stern moving between these two

10    screen shots?

11         THE INTERPRETER:

12              Can you repeat that?

13    EXAMINATION BY MR. ADAM DAVIS:

14    Q.    Is your bow and stern -- Or has your bow

15    and your stern moved between these two screen

16    shots?

17         MR. SLOSS:

18              Object to the form.

19         MR. ALAN DAVIS:

20              Same objection.

21         THE WITNESS:

22              Yeah, there is some movement.

23    EXAMINATION BY MR. ADAM DAVIS:

24    Q.    Thank you.

25              Do you know what time you first saw the

Page 208

1          was just going by that it's clear and we can

2          start heaving up anchor.

3     EXAMINATION BY MR. ADAM DAVIS:

4          Q.     Captain, I don't understand your

5     testimony.

6                 I am trying to find out whether or not

7     there was a conversation between you and the pilot

8     on the bridge concerning vessel traffic prior to

9     you heaving your port anchor.

10         A.     There was no conversation.

11         Q.     With respect to the word "clear," did

12    you hear the word "clear" on the VDR from the

13    pilot?

14         A.     You -- I -- I don't hear it clear on the

15    VDR, but I remember that we clarified that it's

16    clear and we can start heaving up.

17         Q.     When you say you "remember ... we

18    clarified," what did you do and say to clarify it?

19         A.     I clarified that with the pilot before

20    we started heaving up that it's clear and there

21    is -- and we can start.  And also I'm observing the

22    situation, and he's also observing that it's clear

23    and we can start heaving up.

24         Q.     I'm still talking about what this --

25    what yo -- Scratch that.

Kiril L. Karapanov
Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

Page 307

1        Q.    Captain, did you want to top your ship
2    around before the KIEFER BAILEY passed or after the
3    KIEFER BAILEY passed?  Spin your vessel clockwise.
4              MR. SLOSS:
5                   Let me note an objection to the
6         form of the question.
7              MR. ADAM DAVIS:
8                   Okay.
9                   Well, let me ask him again.
10   EXAMINATION BY MR. ADAM DAVIS:
11       Q.    Captain, did you want to spin your
12   vessel from being pointed upriver to downriver
13   before -- before the KIEFER BAILEY passed or after
14   the KIEFER BAILEY passed?
15             MR. ALAN DAVIS:
16                  Objection to the form.
17             THE WITNESS:
18                  Yes.  We were expecting to do
19        that, but we were expecting that KIEFER
20        BAILEY will pass clearly because there was
21        enough space.  Whether it's before the
22        maneuver or after that, it wouldn't matter.
23   EXAMINATION BY MR. ADAM DAVIS:
24       Q.    But to be clear, your expectation was
25   for the KIEFER BAILEY to pass -- Well, to be clear,

Page 308

1    you did not want the KIEFER BAILEY to pass as you

2    were crossways in the river; correct?

3         MR. SLOSS:

4              Object to the form.

5         MR. ALAN DAVIS:

6              Objection as well.

7         THE WITNESS:

8              I'll repeat that again.  I'm

9         saying that when we were making the

10        maneuvers to heave up anchors, we were

11        expecting that KIEFER BAILEY will pass

12        freely around the sh -- next to the ship,

13        because there was enough space for that.

14        THE INTERPRETER:

15             He wants to continue.

16        MR. ADAM DAVIS:

17             Okay.

18        THE WITNESS:

19             There was enough space and it was

20        deep enough, and my observations are that

21        the tugs -- the towboats would not interfere

22        with the ships in situations like that.

23   EXAMINATION BY MR. ADAM DAVIS:

24        Q.   Captain, this is an important question

25   that I would like the Court to know the answer to.

Page 328

1            If the pilot was worried about
2        something, I would expect him to warn
3        KIEFER BAILEY.
4    EXAMINATION BY MR. ADAM DAVIS:
5        Q.    Captain, didn't you have a duty to yield
6    to the KIEFER BAILEY?
7            THE INTERPRETER:
8                To heel?
9            MR. ADAM DAVIS:
10               Yield.
11           THE INTERPRETER:
12               Yield.
13           THE WITNESS:
14               Our expectations were that there
15       won't be a situation.  Our expectations were
16       that KIEFER BAILEY will pass freely.
17           MR. ADAM DAVIS:
18               Respectfully, Captain, we object
19       to the responsiveness of the answer.
20   EXAMINATION BY MR. ADAM DAVIS:
21       Q.    I'm asking you, as the master of the
22   STRANDJA, whether you, as the master of STRANDJA,
23   had en -- had to ensure that the STRANDJA yielded
24   to the KIEFER BAILEY?  Can you tell the Court yes
25   or no?

Kiril L. Karapanov
Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

Page 329

1          MR. SLOSS:

2               Object to the form.

3          MR. ALAN DAVIS:

4               Same objection.

5          THE WITNESS:

6               I think, though, if I determine

7     that there is a situation and it is

8     required, I would yield if there is -- if

9     the situation requires me to do so.

10    EXAMINATION BY MR. ADAM DAVIS:

11       Q.   What a -- What about in this case?  Did

12    you have a duty to yield to the KIEFER BAILEY?

13         MR. SLOSS:

14              Object to the form.

15         MR. ALAN DAVIS:

16              Objection.

17         THE WITNESS:

18              I did not expect a situation, and

19    that's why I didn't yield.

20         MR. ADAM DAVIS:

21              Peter, guys, thi -- We're going to

22    have to get the ma -- We're gonna have to

23    get the magistrate on the phone.  I -- He's

24    not answering the questions.

25         MR. SLOSS:

Transcript of the Testimony of
# Continuation of the Deposition of Kiril L. Karapanov

**Date taken: June 16, 2020**
**Volume III**

**Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al**

All electronic deposition & exhibit files
are available at **<<<www.psrdocs.com>>>**.
Please call or e-mail reporters@psrdocs.com if you need a
**Username** and **Password**.

# Professional Shorthand Reporters, Inc.
**Phone:504-529-5255**
**Fax:504-529-5257**
**Email:reporters@psrdocs.com**
**Internet: http://www.psrdocs.com**

Page 376

1            ECDIS, radars -- ECDIS, radar, the radio.

2    EXAMINATION BY MR. ADAM DAVIS:

3        Q.    Who on your vessel, Captain, was

4    maintaining a lookout prior to collision?

5        A.    All of us who were on the bridge and who

6    participated in the maneuver were observing.

7        Q.    Was that you and the third officer?

8        A.    So it was me, and it was the third

9    officer, and also the people who were on the

10   tank --

11       Q.    On the forecastle?

12             THE INTERPRETER:

13                 On the forecastle.

14             THE WITNESS:

15                 On the forecastle.  The senior

16       officer, the boatswain, and the two seamen.

17   EXAMINATION BY MR. ADAM DAVIS:

18       Q.    Thank you.

19             What was these people supposed to be

20   looking out for?

21       A.    We are required to observe the situation

22   around the ship, what is the situation when we're

23   taking the maneuver.

24       Q.    Okay, Captain.

25             I'm going to show you inland navigation

Continuation of the Deposition of Kiril L. Karapanov
Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

Page 488

1       the holidays.
2   EXAMINATION BY MR. ADAM DAVIS:
3       Q.   And you also wrote in your statement
4   that you don't know whether there was a warning to
5   the towboat; correct?
6           MR. SLOSS:
7               We didn't hear the question.
8   EXAMINATION BY MR. ADAM DAVIS:
9       Q.   You also concluded that you didn't know
10  whether there was a warning to the towboat KIEFER
11  BAILEY; correct?
12          MR. SLOSS:
13              Ma'am, you cannot i -- You cannot
14          instruct the witness.  You can translate
15          Adam's instructions to the witness, and you
16          can translate the witness' answers back, but
17          you cannot instruct the witness.  Thank you.
18          THE INTERPRETER:
19              Adam just said paragraph 4, and I
20          translated paragraph chetiri [sic], which
21          means exactly paragraph 4.
22          MR. ADAM DAVIS:
23              Let's just keep moving.  Yeah.
24          And -- And -- And, Peter, we're just doing
25          the best we can.

Continuation of the Deposition of Kiril L. Karapanov
Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

Page 501

1      Q.    Was he on the phone?  Was he using his

2   phone, holding it against his ear?

3           MR. ALAN DAVIS:

4                Object to the form.

5           THE WITNESS:

6                Not during the whole time.

7   EXAMINATION BY MR. ADAM DAVIS:

8      Q.    I'm not -- That's not my question.  My

9   question is the pilot -- (inaudible)

10          MR. ALAN DAVIS:

11               Wait.  Adam, we didn't hear the

12      question.

13  EXAMINATION BY MR. ADAM DAVIS:

14     Q.    The pilot was using his cell phone;

15  correct?

16          MR. ALAN DAVIS:

17               Object to the form.

18          THE WITNESS:

19               Yes.

20  EXAMINATION BY MR. ADAM DAVIS:

21     Q.    When he was using his cell phone, did he

22  have it up against his ear?

23          MR. ALAN DAVIS:

24               Object to the form.

25          THE WITNESS:

Page 506

1           THE WITNESS:

2                   Yes, I took some measures, and I

3       wanted to be ready.

4   EXAMINATION BY MR. ADAM DAVIS:

5       Q.      Thank you.

6               Captain, one more question.

7               You s -- You stated that at seven -- at

8   about 17:25:57 you gave the command to stop heaving

9   the starboard anchor.

10              Was that the first time you gave the

11  command to stop heaving starboard anchor?

12      A.      Yes.  Yes.  There was no order before

13  that.

14      Q.      Captain, when you first saw the KIEFER

15  BAILEY a mile upriver from your position, what was

16  the expected CPA between your vessel, the STRANDJA,

17  and the KIEFER BAILEY?  In feet or meters.

18              Do you understand my question?

19      A.      I don't remember is my answer.

20      Q.      Captain, during -- Was the -- Did you

21  have a master-pilot exchange with Pilot Johnson?

22      A.      What do you mean?

23      Q.      Do you know what a master-pilot exchange

24  is?

25      A.      Exchange of information.

Page 507

1      Q.    And that is what you're supposed to do

2   when a pilot gets on board; correct?

3      A.    Yes.  We're giving the whole information

4   to the pilot.

5      Q.    Did you ever tell the pilot that the bow

6   thruster was not actually activated during the

7   master-pilot exchange?

8      A.    The bow thru -- The bow thruster was on

9   standby.  And in my opinion, it doesn't need to be

10  on when we are on two anchors.  And when we decided

11  for it to be on, we need only 30 seconds.

12     Q.    Okay.

13           What was exchanged between you and the

14  pilot during the master-pilot exchange, if

15  anything?

16     A.    All of the -- All the information that

17  is needed in -- is in the pilot card.  And if there

18  are any additional questions, we'll clari -- we

19  just clarify that.

20     Q.    So the only thing you did was give the

21  pilot a pilot card; correct?

22           MR. ALAN DAVIS:

23                Object to the form.

24           THE WITNESS:

25                Yes, and to answer to any

Page 508

1           additional questions if he has that.

2                MR. SLOSS:

3                     Your time's up.

4                MR. ADAM DAVIS:

5                     I've got one question.

6                MR. SLOSS:

7                     Last one.

8                MR. ADAM DAVIS:

9                     It's act -- No, it's not time now.

10      It's -- 11:45 is what I have.

11                MR. SLOSS:

12                    No.  I have 11 --

13                MR. ADAM DAVIS:

14                    Well, I got --

15                MR. SLOSS:

16                    I have 11:42.

17                MR. ADAM DAVIS:

18                    No.  I -- I -- I got written down

19      11:45.  So ...

20      EXAMINATION BY MR. ADAM DAVIS:

21         Q.    Captain, what were the drafts of the

22      STRANDJA at the time of collision?

23         A.    That information is in the pilot card.

24      I can't remember right now.

25                    7.63 meters on the bow.  And the stern

Continuation of the Deposition of Kiril L. Karapanov
Marquette Transportation Company Gulf-Inland, LLC v. Navigation Maritime Bulgare, et al

Page 509

1   is -- 8.23 meters, the stern.

2           MR. ADAM DAVIS:

3               Thank you.

4           MR. SLOSS:

5               All right.  Who's next?

6           MR. ALAN DAVIS:

7               Kevin, you want to get yours out

8       of the --

9           MR. SLOSS:

10              Kevin, you want to get yours out

11      of the way?

12          MR. FREY:

13              Yeah.  I can do that real quick.

14          MR. ADAM DAVIS:

15              And -- And -- And, guys, just a

16      housekeeping measure real fast.

17              I think Kevin's agreed to split

18      the fee of the interpreter, but I mean if --

19      I'd like for you guys just to, you know,

20      agree that we'll split up the fee of the

21      interpreter.  And I think we discussed

22      yesterday that a hundred dollars an hour is

23      a fair and reasonable price to pay

24      Miss Rali.

25              So I'd be grateful if you're gonna