**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**MARQUETTE TRANSPORTATION**                    **CIVIL ACTION**
**CO. GULF-INLAND, LLC**


**VERSUS**                                      **NO:  19-10927**


**NAVIGATION MARITIME**                         **SECTION: G**
**BULGARE et al.**

<br>

**<u>Jury Instructions</u>**


**<u>April 4, 2022</u>**

# Jury Charge Number 1

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be

influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendants

in arriving at your verdict.

## Jury Charge Number 2

Plaintiff Marquette Transportation Company has the burden of proving its case by a preponderance of the evidence, and Defendants Balkan Navigation Limited and Navigation Maritime Bulgare have the burden of proving their counterclaim by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that either Plaintiff or Defendants have failed to prove any element of their claims by a preponderance of the evidence, then they may not recover on that claim.

## Jury Charge Number 3

The fact that a person brought a lawsuit or a counterclaim and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

## Jury Charge Number 4

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proved.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts by a preponderance of all the evidence, both direct and circumstantial.

## Jury Charge Number 5

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has the witness made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

## Jury Charge Number 6

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state their opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

## Jury Charge Number 7

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

## Jury Charge Number 8

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

## Jury Charge Number 9

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

## Jury Charge Number 10

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

## Jury Charge Number 11

Plaintiff's Exhibit 1 is an illustration. It is Plaintiff Marquette's computer reconstruction of the incident. If your recollection of the evidence differs from the exhibit, rely on your recollection.

## Jury Charge Number 12

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been read to you. This deposition testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

## Jury Charge Number 13

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

## Jury Charge Number 14

Plaintiff Marquette's claim against Defendant Balkan, and Balkan's counterclaim against Marquette, are both claims for ordinary negligence.

Negligence is doing an act that a reasonably prudent person would not do, or failing to do something that a reasonably prudent person would do, under the same or similar circumstances. The occurrence of an accident, standing alone, does not mean that anyone was negligent or that anyone's negligence caused the accident.

Under maritime law, to state a negligence claim, the plaintiff must prove by a preponderance of the evidence that the defendant owed plaintiff a duty of care, that the defendant breached that duty, that the plaintiff was injured or damaged, and that the defendant's conduct caused the plaintiff's injury or damages. The plaintiff's failure to prove any one of these elements precludes a finding that the defendant was negligent.

Similarly, for the defendant to prevail on its counterclaim, the defendant must prove that plaintiff owed the defendant a duty of care, that the plaintiff breached that duty, that the defendant was injured, and that plaintiff's conduct caused the defendant's injury. If the defendant fails to prove any one of these elements, you cannot find that plaintiff was negligent.

## Jury Charge Number 15

The duty of the pilot is to exercise ordinary care under the circumstances. The applicable standards of care stem from the traditional concepts of prudent seamanship, statutory and regulatory rules, and recognized customs and uses.

## Jury Charge Number 16

To determine causation, you must consider whether the conduct in question was a substantial factor in bringing about the accident. Additionally, there can be more than one substantial factor; that is, the conduct of multiple parties can be substantial factors in causing an accident.

To prove causation, a party must show not merely that the other party's actions caused the injury, but that those actions were a proximate cause of the injury. This means that Plaintiff Marquette must show that Defendants Navigation Maritime Bulgare and Balkan Navigation Ltd. or Defendant Pilot Johnson's actions were a substantial factor in bringing about or actually causing Plaintiff's injury, and that the injury was either a direct result or a reasonably probable consequence of Defendants' Navigation Maritime Bulgare and Balkan Navigation Ltd. or Defendant Pilot Johnson's actions.

Similarly, Defendant Balkan must show that Marquette's actions and/or Pilot Johnson's actions were a substantial factor in bringing about or actually causing Defendant Balkan's injury, and that the injury was either a direct result or a reasonably probable consequence of Marquette's actions and/or Pilot Johnson's actions.

## Jury Charge Number 17

Under the Pennsylvania rule, a vessel that at the time of a collision violates a regulation designed to prevent collisions is presumed to have caused the accident. To overcome this presumption, that vessel must prove not only that its regulatory violation did not cause the collision, but that it could not have been a cause of the collision.

Therefore, in this case, if you find that either Plaintiff or Defendants violated one or more regulations, then under the Pennsylvania Rule, the regulatory violation is presumed to have been a proximate cause of the incident unless the violator convinces you from a preponderance of the evidence that its regulatory violation could not have been a cause of the accident.

## Jury Charge Number 18

The claim against Pilot Robert Johnson is for gross negligence. Ordinary and gross negligence are two standards on the same continuum. I have already instructed you on ordinary negligence. You must determine if Pilot Johnson's actions constitute gross negligence.

"Gross negligence" is defined as reckless and wanton misconduct. Whether an individual's acts amount to gross negligence depends on the particular circumstances of each case. Gross negligence requires both of the following: (1) that one committed an act or omission that objectively involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) that one had actual subjective awareness of the risk involved, but nevertheless proceeded in conscious indifference to the rights, safety, or welfare of others.

## Jury Charge Number 19

You must also determine whether Defendants Balkan and Navigation Maritime Bulgare, as the vessel owners, were negligent. At the time of the accident, Pilot Johnson was aboard the M/V STRANDJA as a compulsory pilot. Louisiana state law requires that local pilots guide foreign ships along Louisiana waterways, including the Mississippi River. As such, Pilot Johnson was what is referred to as a "compulsory pilot."

If a maritime collision is caused by the fault of a compulsory pilot, the shipowner will not be liable for the compulsory pilot's negligence. Therefore, even if you find that Pilot Johnson was negligent, you must separately decide if Defendants Balkan and Navigation Maritime Bulgare were negligent.

Defendant Balkan will be liable if the negligence of the master or crew contributed to the collision. The master of a vessel with a compulsory pilot is entitled to assume that the pilot is an expert on local conditions and practices, until it becomes clear that the compulsory pilot is steering the vessel into danger. Further, a master should not displace the compulsory pilot unless the pilot is intoxicated, manifestly incapacitated, or other exceptional circumstances exist.

21

## Jury Charge Number 20

If you find that Defendants Balkan or Navigation Maritime Bulgare were negligent, and/or Pilot Johnson was grossly negligent, and that the negligence, or gross negligence, as appropriate, was a proximate cause of Marquette's injury, but you also find that the accident was due partly to Marquette's contributory negligence, then you must determine the percentage that each party's negligence contributed to the accident. You will provide this information by filling in the appropriate blanks in the jury questions. Do not make any reduction in the amount of damages that you award to the prevailing party. It is my job to reduce any damages that you award by any percentage of contributory negligence that you assign to the parties.

## Jury Charge Number 21

The Inland Navigation Rules are the "Rules of the Road" governing navigation on inland waters. The broad purpose of these rules is to prevent collisions.

To that end, the rules impose a duty of care on vessel owners and operators to operate such vessels under the rule of good seamanship and in a safe and seaworthy manner. Anyone who undertakes operation of vessels on navigable waters is charged to know and obey these rules.

## Jury Charge Number 22

Inland Navigation Rule 2 states nothing in the rules shall exonerate any vessel, or the owner, master, or crew thereof, from the consequences of any neglect to comply with these rules or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case.

The ordinary practice of seamen also means good seamanship. What constitutes good seamanship is a question of fact that is decided after a consideration of all relevant circumstances and conditions.

## Jury Charge Number 23

Inland Navigation Rule 5 requires every vessel, at all times, to maintain a proper look-out. A vessel must maintain lookout by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

**Jury Charge Number 24**

Inland Navigation Rule 6 requires every vessel to proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions. In determining safe speed, you may consider the following factors: visibility, traffic density, maneuverability of the vessel with special reference to stopping distance and turning ability in the prevailing circumstances, and the state and proximity of navigational hazards.

## Jury Charge Number 25

Inland Navigation Rule 7 requires every vessel to use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists. If there is any doubt such risk shall be deemed to exist.

Proper use shall be made of radar equipment if fitted and operational, including long-range scanning to obtain early warning of risk of collision and radar plotting or equivalent systematic observation of detected objects.

Assumptions shall not be made on the basis of scanty information, especially scanty radar information.

In determining if risk of collision exists the following considerations shall be among those taken into account: (i) such risk shall be deemed to exist if the compass bearing of an approaching vessel does not appreciably change; or (ii) such risk may sometimes exist even when an appreciable bearing change is evident, particularly when approaching a very large vessel or a tow or when approaching a vessel at close range.

## Jury Charge Number 26

Inland Navigation Rule 8 provides that action to avoid collision shall, if the circumstances allow, be positive, made in ample time, and with due regard to the observance of good seamanship. Any alteration of course or speed to avoid collision shall, if the circumstances allow, be large enough to be readily apparent to another vessel observing visually or by radar. Vessels should avoid a succession of small alterations of course or speed.

If there is sufficient sea room, alteration of course alone may be the most effective action to avoid a close-quarters situation provided that it is made in good time, is substantial and does not result in another close-quarters situation.

Action taken to avoid collision with another vessel shall be such as to result in a passing at a safe distance. The effectiveness of the action shall be carefully checked until the other vessel is finally past and clear. If necessary to avoid collision or allow more time to assess the situation, a vessel shall slacken her speed or take all way off by stopping or reversing her means of propulsion. A vessel which is required not to impede the passage or safe passage of another vessel shall, when required by the circumstances, take early action to allow sufficient sea room for the safe passage of the vessel.

A vessel required not to impede the passage of another vessel is not relieved of this obligation if approaching the other vessel so as to involve risk of collision and shall, when taking action, have full regard to the action which may be required by the other Inland Navigation Rules.

A vessel the passage of which is not to be impeded remains fully obliged to comply with the other Inland Navigation Rules when the two vessels are approaching one another so as to involve risk of collision.

## Jury Charge Number 27

If you find that the portion of the Mississippi River where the collision occurred is a narrow channel, then Inland Navigation Rule 9 applies. Rule 9 requires vessels proceeding along the course of a narrow channel to keep as near to the outer limit of the channel which lies on her starboard side as is safe and practicable. Further, downbound vessels operating in narrow channels with a following current shall have the right-of-way over an upbound vessel, shall propose the manner and place of passage, and shall initiate the maneuvering signals prescribed by the Inland Navigation Rules.

Inland Navigation Rule 9 also provides that a vessel must not cross a narrow channel if such a crossing impedes the passage of a vessel which can safely navigate only within such channel. Further, a vessel shall, if the circumstances allow, avoid anchoring in a narrow channel.

The application of the narrow channel rule is not based on physical dimensions of the body of water alone.

## Jury Charge Number 28

Certain federal regulations prescribe rules for all vessels operating in the Lower Mississippi River below mile 233.9 above Head of Passes including South Pass and Southwest Pas, to assist in the prevention of allisions; collisions and groundings so as to ensure port safety and protect the navigable waters of the Mississippi River from environmental harm resulting from those incidents, and to enhance the safety of passenger vessels moored or anchored in the Mississippi River.

Specifically, when passing another vessel—in motion, anchored, or tied up—a wharf or other structure, work under construction, plant engaged in river and harbor improvement, levees withstanding flood waters, building partially or wholly submerged by high water, or any other structure liable to damage by collision, suction or wave action, vessels shall give as much leeway as circumstances permit and reduce their speed sufficiently to preclude causing damages to the vessel or structure being passed. Since this subparagraph pertains directly to the manner in which vessels are operated, masters of vessels shall be held responsible for strict observance and full compliance therewith. During high river stages, floods, or other emergencies, the District Commander may prescribe by navigation bulletins or other means the limiting speed in land miles per hour deemed necessary for the public safety for the entire section or any part of the waterways covered by this paragraph, and such limiting speed shall be strictly observed.

## Jury Charge Number 29

Errors in judgment committed by a vessel put in sudden peril through no fault of her own are to be leniently judged. This rule is founded upon the sound principle that a ship has no right to put another ship into a situation of extreme peril, and then charge that other ship with misconduct. While this principle must be qualified to the extent that it does not exculpate all faults, however flagrant, or obviate the duty of a ship's master to act with a level head, it does require that allowances be made for the position of the master at the time of the circumstances involved, and that his conduct not be judged by the standards of hindsight. You should not second guess parties in peril and expect from them the most precise judgments. Decisions under dire conditions are expected to be and are naturally more reflexive than reflective. Instead, the rule is well settled that when one vessel by her own wrongful maneuver places another in a situation of immediate peril, and the latter does not act with that promptness and accuracy of judgment which might be expected when there was complete presence of mind, and happens to delay or do something, which turns out to have been a mistake, she will not thereby become such a contributor to the mischief as to render her liable for damages.

## Jury Charge Number 30

Anchoring in the Mississippi River below Baton Rouge, including South and Southwest Passes, is prohibited outside of established anchorages except in cases of emergency. In an emergency, if it becomes necessary to anchor a vessel outside an established anchorage, the vessel shall be anchored so that it does not interfere with or endanger any facility or other vessel. The master or person in charge of the vessel shall notify the Captain of the Port of the location of the emergency anchoring by the most expeditious means and shall move the vessel as soon as the emergency is over.

In an emergency, if it becomes necessary to anchor a vessel in South Pass or Southwest Pass, the vessel shall be positioned as close to the left descending bank as possible.

No vessel may be anchored unless it maintains a bridge watch, guards and answers Channel 16 FM (or the appropriate VTS New Orleans sector frequency), maintains an accurate position plot and can take appropriate action to ensure the safety of the vessel, structure, and other vessels.

When anchoring individually, or in fleets, vessels shall be anchored with sufficient anchors, or secured with sufficient lines, to ensure their remaining in place and withstanding the actions of winds, currents and the suction of passing vessels.

No vessel may be anchored over revetted banks of the river or within any cable or pipeline area. The locations of revetted areas and cable and pipeline areas may be obtained from the District Engineer, Corps of Engineers, New Orleans, LA.

The intention to transfer any cargo while in an anchorage shall be reported to the Captain of the Port, giving particulars as to name of ships involved, quantity and type of cargo, and expected duration of the operation. The Captain of the Port shall be notified upon completion of operations. Cargo transfer operations are not permitted in the New Orleans General or Quarantine

Anchorages. Bunkering and similar operations related to ship's stores are exempt from reporting requirements.

Vessels anchored in the Lower Kenner Bend Anchorage are prohibited from using or exercising the ship's hold cargo cranes. Vessels in this anchorage must keep the ship's hold cargo gear in the down and hawsed position, as rigged for sea transits. Deck-mounted cranes, deck booms and stiff legs may be used to take on ships stores and spare parts and may be used to move manifold hoses.

Nothing in this section relieves the owner or person in charge of any vessel from the penalties for obstructing or interfering with navigational aids or for failing to comply with the navigation laws for lights, day shapes, or fog signals and any other applicable laws and regulations.

## Jury Charge Number 31

If Marquette has proved its negligence claim against Defendants Navigation Maritime Bulgare or Balkan Navigation Ltd. and/or its gross negligence claim against Pilot Johnson by a preponderance of the evidence, you must determine the damages to which Marquette is entitled. Or, if Defendant Balkan has proved its counterclaim against Marquette and/or Pilot Johnson by a preponderance of the evidence, you must determine the damages to which Defendant Balkan is entitled. You should not interpret the fact that I am giving instructions about damages as an indication in any way that I believe that any party should, or should not, win this case. It is your task first to decide whether Defendants Navigation Maritime Bulgare and Balkan Navigation Ltd. and/or Pilot Johnson are liable to Marquette or whether Marquette and/or Pilot Johnson is liable to Defendant Balkan. I am instructing you on damages only so that you will have guidance in the event you decide that one party is liable to the other and is entitled to recover money.

## Jury Charge Number 32

Plaintiff Marquette and Defendant Balkan are claiming damages for the loss of their personal property. You may award as damages an amount equal to the cost of restoring the property to its condition before the incident forming the basis of this lawsuit.

You also may take into consideration any loss that the prevailing party sustained by being deprived of the use of the property during the time required for its repair or replacement.

## Jury Charge Number 33

If you find that Defendants Navigation Maritime Bulgare and Balkan Navigation Ltd. or Pilot Johnson are liable to Marquette, then you must determine an amount that is fair compensation for all of Marquette's damages. Or, if you find that Marquette and/or Pilot Johnson is liable to Defendant Balkan, then you must determine an amount that is fair compensation for all of Balkan's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make a party whole—that is, to compensate the party for the damage that it has suffered. Compensatory damages are not limited to expenses that a party may have incurred because of their injury. If either party wins, that party is entitled to compensatory damages for the injury it has suffered because of the other party's wrongful conduct.

You may award compensatory damages only for injuries that a party proves were proximately caused by the other party's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the party's damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize a party. You should not award compensatory damages for speculative injuries, but only for those injuries that either Marquette or Balkan have actually suffered or are reasonably likely to suffer in the future.

Maritime law permits parties to recover money damages resulting from a collision caused by the negligence of another party or the gross negligence of a compulsory pilot. Damages may include—but only if proven with reasonable certainty—the cost of vessel repair, loss of use (also called detention damages), and lost profits. Proving lost profits or detention damages to a reasonable certainty requires a showing that a vessel has been engaged or was capable of being engaged in a profitable commerce. Damages must not be merely speculative, and something else must be shown than the simple fact that the vessel was laid up for repairs.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that a party prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

## Jury Charge Number 34

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.